813 F.2d 339
 1987 A.M.C. 1850
 In the Matter of the Complaint of VILLERS SEAFOOD CO., INC.,
for the exoneration from or limitation of
liability as owner of the F/V VILCO III,
Plaintiff-Appellee,
v.
Dale VEST, Claimant-Appellant.
 No. 86-3242.
 United States Court of Appeals,
Eleventh Circuit.
 March 27, 1987.
 
 Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, PA, Joel S. Perwin, Miami, Fla., for claimant-appellant.
 Fowler, White, Gillen, Boggs, Villareal & Banker, PA, Brendan P. O'Sullivan, Tampa, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before ANDERSON and CLARK, Circuit Judges, and SIMPSON, Senior Circuit Judge.
 SIMPSON, Senior Circuit Judge:
 
 
 1
 Dale Vest ("Vest"), the captain of the shrimp trawler VILCO III, and his wife, filed suit in state court against the vessel and his employer, Villers Seafood Co., Inc., the owner of the VILCO III, alleging unseaworthiness of the vessel and one of its ladders and additionally alleging an action under the Jones Act, 46 U.S.C. Sec. 688, which stated that the accident was proximately caused by Viller's failure to properly install, inspect and maintain the ladder. Villers, in turn, brought an action for exoneration from, or limitation of, liability under 46 U.S.C. Sec. 183(a), alleging, inter alia, that it had no privity or knowledge[1] of the condition which allegedly caused the accident. After a non-jury trial in which the court addressed the issues of unseaworthiness and negligence as well as the claim for limitation of liability, the court concluded that the vessel and ladder were not unseaworthy and that Villers was not only innocent of any negligence but was without privity or knowledge as to the cause of the accident. In this appeal, the Vests argue that the district court committed clear error in finding for the defendants. A review of the historical facts which are not in dispute is essential to an understanding of the Vests' arguments.
 
 
 2
 At the time of the accident, the VILCO III was riding in calm seas, in daylight, and barely moving. Vest was below decks in the engine room and attempted to climb a ladder leading to the main afterdeck. As Vest ascended the ladder, the top of the ladder moved away from the deck beam which had been supporting it and dumped him on the engine below. After the fall, Vest climbed the ladder and informed his crew of the accident. Charles Ginniman, a seaman, secured the top of the ladder to the deck beam using nails and tools which had been kept aboard the VILCO III at all relevant times.
 
 
 3
 The evidence shows that the ladder, as originally supplied by the boatbuilder, is designed to be removable in order to allow access to the vessel's engine and transmission which sit immediately below it. To this end, the builder secures the legs of the ladder with horseshoe-shaped wooden blocks and attaches the top of the ladder to a deck beam by means of a hook-and-eye fastener which is located under the top step. At the time of the accident, the horseshoe blocks were in place but the hook-and-eye fastener had been removed by persons unknown at a time unknown to either party. The court found that the loss of the hook-and-eye was "somewhat of a latent condition not readily determinable from a casual visual inspection." (Record vol. 1 p. 19) However, crewman Ginniman testified that he knew that the ladder was unattached at least two months prior to the date of the accident because he began working on board the VILCO III at that time and on his first day he was ordered to paint the engine room deck and in doing so he removed the ladder which was already missing its top fastener.
 
 
 4
 Vest had been captain for over four months prior to the accident during the relevant tour of duty. Among the duties Villers assigned him as captain were a daily trip to the engine room to check the engine oil and either the correction of unsafe conditions of which he was aware or the report of such unsafe conditions to a repair crew which would perform any necessary repairs or maintenance. Despite the fact that he usually used the ladder to conduct his daily check of the engine oil, Vest denied that he had any knowledge, prior to the accident, that the top of the ladder had become unfastened. The evidence is uncontradicted that he never reported any such problem to Villers.
 
 
 5
 The evidence further showed that the hook-and-eye fasteners are known in the shrimping industry to be subject to wear and are commonly replaced by nails which are removed with a crowbar when it is necessary to move the ladder.
 
 
 6
 From these unchallenged facts and other evidence, which will be discussed where necessary, infra, the court found no unseaworthiness or negligence on the part of Villers:
 
 
 7
 Vest, as Villers' captain, and in his own interest, at all relevant times had a far better basis for knowledge of the safety of the engine room ladder than anyone else at Villers, and there is no basis to impute such knowledge or duty to obtain such knowledge to Villers except through Captain Vest, the officer in charge of the vessel.
 
 
 8
 Neither the VILCO III nor its engine nor its engine room ladder were unseaworthy, nor was Villers guilty of negligence.
 
 
 9
 (Record Vol. 1 p. 18) (paragraph numbers and footnotes omitted).
 
 
 10
 The court also concluded, as a matter of law, that Villers had no liability to the Vests for any injury which occurred as a result of the fall:
 
 
 11
 It would be wholly unreasonable to consider the VILCO III or its engine room ladder to be unseaworthy under the circumstances of this case, or Villers to have been guilty of any negligence which was a proximate cause of Vest's unfortunate injury, which was wholly caused by his own lack of care.
 
 
 12
 Vest's accident occurred without any privity or knowledge of Villers.
 
 
 13
 Villers and the F/V VILCO III are entitled to be exonerated from any liability to Vest in this cause.
 
 
 14
 (Record Vol. 1 p. 18-19) (paragraph numbers and footnotes omitted).
 
 
 15
 The Vests argue that the findings that the VILCO III was seaworthy and that Villers was not guilty of negligence were clearly erroneous in light of the evidence presented and were the result of the application of an incorrect standard of proof of proximate cause and the misapplication of the doctrines of contributory negligence and assumption of the risk.
 
 
 16
 The Vests' chances of recovery on either the unseaworthiness or the negligence counts rest upon convincing the court that the ladder from which Vest fell was defective because it was not attached to the upper deck beam. If that essential finding is lacking, all questions of the applicability of the defenses raised by Villers and the extent of its liability are moot. The Vests argue that the evidence on this point was overwhelmingly in their favor because it showed that the boatbuilder originally supplied the hook-and-eye, that the industry commonly attached the tops of the ladders with nails when the original fastener became worn and that the president of Villers implicitly acknowledged that an unattached ladder was unsafe to use when he testified that a crewman who removed a ladder had a responsibility to refasten it. The Vests admit, however, that the evidence also shows that the unfastened ladder was used without incident several times a day for over two months by both Vest and Ginniman and they concede that "... this experience creates some slight inference ..." that the ladder was seaworthy. (Reply brief p. 3 n. 1). However, they argue that the inference, though permissible, is insufficient to overcome the evidence of unseaworthiness. Villers, on the other hand, reminds us that this court's duty is not to retry the case and choose between two permissible views of the evidence but to affirm unless we are left with a definite and firm conviction that a mistake has been committed. (Answer brief p. 7-11) See, Fed.R.Civ.P. 52(a); Taylor v. Hudson Pulp and Paper Corp., 788 F.2d 1455 (11th Cir.1986). Although this case is close, we are convinced that the finding that the ladder was seaworthy was clear error. Although there is no presumption that a ship is unseaworthy merely because an accident has occurred on it, Caldwell v. Manhattan Tankers Corp., 618 F.2d 361, 363 (5th Cir.1980); Jefferson v. Taiyo Katun K.K., 310 F.2d 582-83 (5th Cir.1962), cert. denied, 372 U.S. 967, 83 S.Ct. 1091, 10 L.Ed.2d 130 (1963), this is not a case in which the cause of the accident is totally unknown. The district judge specifically found that the unsecured top of the ladder moved while Vest was climbing it. There is no finding that Vest was using the ladder in a negligent or unusual manner at the time of his accident nor is there evidence in the record to suggest such a finding. If a ship's equipment breaks under normal use, the logical inference that follows is that the equipment was defective. Satchell v. Svenska Ostasiatiska Kompaniet, 385 F.2d 76, 78 (4th Cir.1967). The same presumption arises when a safety device is removed from a ship's equipment resulting in the type of accident which the safety device was designed to prevent. While the ladder was in normal use the top of the ladder moved, and a seaman fell. The fact that neither Ginniman nor Vest had fallen before the accident is of little probative value where there is no finding or evidence to support an alternative theory of the cause of the fall. Consequently, we must reverse the finding that the ladder was not unseaworthy.
 
 
 17
 The question next arises whether there was sufficient evidence in the record to support the conclusion that Villers was either not liable for Vest's injuries or that it was entitled to exoneration or limitation of liability under the provisions of 46 U.S.C. Sec. 183(a). The trial court held that it would be unreasonable to consider unseaworthiness a proximate cause of Vest's accident because the accident "was wholly caused by his own lack of care." The grounds for that holding are unclear. There is no evidence to suggest that Vest was negligent in the manner in which he ascended the ladder at the time of his fall. The defense disclaimed liability under two theories: (1), the accident was not caused by the unseaworthiness of the ladder but by Vest himself when he knowingly used an unattached ladder despite the fact that there was a safe alternative available; or, (2), Vest caused the accident by failing to perform a captain's duty to assure that his ship and its appliances were seaworthy. We note first that there is no finding in the court's opinion that Vest actually knew that the ladder was unattached. Even if the court did make such a finding, and even if that finding was supported by evidence, it would not bar recovery in this action. Assumption of the risk and contributory negligence are not defenses to a claim for unseaworthiness but may only be proven in mitigation of damages. Reyes v. Vantage S.S. Co., 558 F.2d 238, 244 (5th Cir.1977). Nor would Vest's failure to discover and correct the unattached ladder constitute a bar to recovery. Vest did testify that it was his duty to keep the vessel in repair, and some courts have denied recovery under the "Walker doctrine" which states that a ship's officer whose breach of duty to maintain a safe ship has caused his injury by an unseaworthy ship or appliance may not recover damages for his injuries. However, in each of the cases in which the court has denied recovery[2] the injured officer actually knew of the existence of the unseaworthy condition before the accident. We are unwilling to extend the doctrine to a case in which no misconduct or actual knowledge of the existence of an unseaworthy condition has been proven. The owner's right to have his conditions of employment and instructions obeyed is adequately vindicated in this case by application of mitigation of damages according to the doctrine of comparative negligence.
 
 
 18
 Our conclusion that the ladder was unseaworthy eliminates any need to determine whether the defendant was also guilty of negligence in its maintenance of the ladder. However, the question whether the district court erred in finding that Villers was entitled to a limitation of liability remains before the court. Here too, the district court committed error. A shipowner may not limit his liability under the limitation act if his ship is unseaworthy due to equipment which was defective at the start of the voyage. He is charged with knowledge of the existence of that condition. Hercules Carriers, Inc. v. Florida, 768 F.2d 1558, 1563 (11th Cir.1985). Here, the uncontested evidence established that the ladder had been unfastened for over two months and that the VILCO III had been at sea only a few days when Vest was injured. Accordingly, we hold that the district court erred in finding that Villers had no privity or knowledge of the unseawothiness of the ladder and in holding that Villers was entitled to limit its liability under 46 U.S.C. Sec. 183(a).
 
 
 19
 For the reasons stated above we REVERSE the judgment of the district court and REMAND this case for further action consistent herewith.
 
 
 20
 REVERSED and REMANDED.
 
 
 
 [1]
 Section 183(a) limits an owner's liability only for those losses which were incurred "without the privity or knowledge" of the owner
 
 
 [2]
 See, Walker v. Lykes Bros. S.S. Co., 193 F.2d 772, 773-74 (2d Cir.1952). The appellant has cited three other cases which follow this doctrine: Dixon v. United States, 219 F.2d 10, 16-17 (2d Cir.1955); Reinhart v. United States, 457 F.2d 151, 152-55 (9th Cir.1972); and Peymann v. Perini Corp., 507 F.2d 1318, 1322-23 (1st Cir.1974), cert. denied, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975)