Barry **BRISTER** and Karen Brister, Plaintiffs–Appellants, Cross–Appellees,

v.

**A.W.I., INC., et al., Defendants–Appellees, Cross–Appellants.**

No. 90–3263.

United States Court of Appeals, Fifth Circuit.

Oct. 17, 1991.

Rehearing and Rehearing En Banc Denied Nov. 25, 1991.

**352**

Chester C. Stetfelt, Jr., Kenneth W. Manuel, Jacobs, Manuel & Kain, A. Remy Fransen, Jr., Fransen & Hardin, New Orleans, La., for plaintiffs-appellants, cross-appellees.

Wood Brown, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., for defendants-appellees, cross-appellants.

Before KING and JONES, Circuit Judges.*

---

* Judge Alvin B. Rubin was a member of the original panel but died on June 11, 1991 before this decision was rendered. This matter is being decided by a quorum. 28 U.S.C. § 46(d).

KING, Circuit Judge:

Barry Brister sued his employer, A.W.I., Inc. (AWI), for injuries suffered when he slipped and fell during the course of his employment as a member of a drill rigging crew. Brister appeals the district court's decision, contending that the court erred in: (1) limiting AWI's liability under 46 U.S.C.App. § 183 to compensate him for his injury by holding that the jury finding of no negligence precluded consideration of whether AWI had privity or knowledge, and that no evidence supported a presumption of privity or knowledge; (2) determining that AWI's insurer could receive the benefit of AWI's limitation of liability; and (3) granting interest on the award from the date of the judgment instead of from the date of the accident, or in the alternative, from the date of the judicial demand. In addition, AWI cross-appeals the district court's supplemental judgment awarding Brister $40,747.52 in maintenance and cure benefits in addition to the limitation fund. We vacate the decision of the district court on the first ground, affirm on the remaining issues, and remand for fact findings as instructed herein.

## I. BACKGROUND

Brister injured his back while "tripping pipe out of the hole" on AWI Rig # 4 on December 5, 1988. This procedure involves lifting segments of pipe from the drilling hole and then removing and racking the topmost segment. Wedge shaped blocks, known as "slips," prevent the lower segments of pipe from slipping. While Brister was pulling a slip handle to loosen these blocks, he lost his footing on the uneven matting covering the drill floor and fell, injuring his back. The accident left him permanently disabled from performing manual labor.

Rubber safety mats cover the entire drill floor. One mat, called the rotary mat, surrounds the rotary where the pipe goes into the hole. Other mats mesh against this rotary mat. Before Brister's accident, the rotary mat on Rig # 4 had been damaged. On September 20, 1988, the company had replaced the damaged mat with the rotary mat from Rig # 7. Because the drill floor of each rig has a different size and dimension, however, the rotary mat from Rig # 7 did not mesh properly with the other mats on Rig # 4. After installing the mat, AWI "stacked" the rig (took it out of service) until late November 1988 because it did not have work for it. When Brister's accident occurred in early December, the rotary mat from Rig # 7 was still being used on Rig # 4.

Brister charged that AWI's failure to replace the defective mat caused his accident. He alleged negligence under the Jones Act, 46 U.S.C.App. § 688, and unseaworthiness under general maritime law. He also sought maintenance and cure. His wife, Karen Brister, joined in the suit to seek damages for loss of consortium.

AWI denied that the vessel was unseaworthy or that they had been negligent. In the alternative, AWI pleaded comparative negligence and limitation of liability. The district court conducted a bifurcated trial, trying all issues to the jury except for those pertaining to limitation of liability. The jury found that AWI was not "negligent in a manner that was a cause of injury to the plaintiff," but found the vessel was "unseaworthy in a manner that was a proximate cause of injury to the plaintiff." The jury awarded damages of $385,000 to Brister and $25,000 to his wife. The court entered judgment on these amounts, with legal interest from the date of the judgment.

The district court subsequently conducted a bench trial on the limitation issue based on the record from the Jones Act trial, supplemented by the parties. In viewing the record from the Jones Act trial, the court reasoned that it was collaterally estopped from considering whether AWI had privity or knowledge of the unseaworthy condition that caused Brister's injury because the jury had already determined that AWI had not been negligent. The district court found in the alternative that the facts failed to show that AWI had privity or knowledge of the vessel's unseaworthy condition. Because AWI succeeded on its limitation defense, the court limited

AWI's liability to $108,635, the value of the vessel. 749 F.Supp. 749. After AWI deposited this amount with the court, Brister moved for a supplemental judgment, arguing that he was entitled to $40,747.52 in past medical expenses (or "cure") in addition to the $108,635 limitation fund because an employer's liability for maintenance and cure may not be limited to the amount of the vessel. The district court agreed and awarded Brister $40,747.52 with legal interest from the date of judgment. AWI cross-appeals from this supplemental judgment.

Brister moved to modify the judgment to include interest from the date of the accident, or in the alternative, from the date of judicial demand. The district court denied the motion. Brister appeals from this ruling and from the district court's judgment limiting his award to the value of the vessel.

## II. ANALYSIS

We independently review a district court's conclusions of law. We may reverse its findings of fact, however, only if we determine that they were clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Finally, we review the district court's decision to deny prejudgment interest for abuse of discretion. *See Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 729 (5th Cir. 1980).

### A. *Limitation of liability*

Brister argues that the district court erred in holding that the jury finding of no negligence precluded consideration of AWI's privity or knowledge in the limitation proceeding because the issues of negligence under the Jones Act and "privity or knowledge" under the limitation of liability provision are not identical. We agree. Although the issues can be, and were in this case, formulated in nearly identical language, the disparate policies underlying each inquiry have resulted in definite differences in application and result.

In *Diplomat Electric, Inc. v. Westinghouse Electric Supply Co.*, 430 F.2d 38, 45 (5th Cir.1970), we declared that collateral estoppel "is limited to matters distinctly put in issue, litigated, and determined in the former action." An important aspect of determining whether a previously litigated matter has collateral estoppel effect is the identity of that matter with the issue currently before the court.[1] To resolve the question of whether the jury finding of no negligence in Brister's Jones Act claim estops inquiry into whether AWI had privity or knowledge of Rig # 4's unseaworthiness in the limitation proceeding, we must examine what was litigated in the jury trial and what was left to litigate in the limitation proceeding.

At the jury trial, Brister claimed that AWI was liable for his injury under the Jones Act, and also claimed that the unseaworthiness of the vessel proximately caused his injury under general maritime law. Since the jury found AWI was not negligent, Brister did not prevail in his Jones Act claim. However, he succeeded in establishing that the vessel was unseaworthy under general maritime law, enabling him to receive damages for his injury. He also received an award for maintenance and cure under general maritime law.

Because an employer is liable for the negligence of his employees under the Jones Act, the Jones Act generally provides a broad basis for liability. In addition, the Jones Act contains a liberal causation requirement. If the defendant's negligence played any part, however small, in producing the seaman's injury, it results in liability. *Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th

---

1. Not only the facts, but also the legal standard used to assess them, must be identical. *See, e.g., Southern Pac. Transp. Co. v. Smith Material Corp.*, 616 F.2d 111, 115 (5th Cir.1980) (in suit by company against railroad, determination that company-operated truck was 75% negligent and railroad was 25% negligent in causing collision would not have collateral estoppel effect in suits brought by passengers against railroad because railroad owes a higher duty of care as a common carrier).

Cir.1982). Other than this generous construction, though, the issue is essentially the same as in all personal injury cases: whether the employer acted or failed to act in a way that legally caused the seaman's injury determines whether, as a matter of policy, the seaman should be entitled to a remedy. In considering Brister's claim, the jury was instructed that "where the employer or his agents knew or should have known of dangerous conditions, and those conditions cause injury to a seaman, the employer is liable under the Jones Act." The jury found by a preponderance of the evidence that AWI did not act negligently. Although Brister argues to the contrary, the jury's finding that AWI was not negligent was fully and fairly litigated, and necessary to the outcome of the Jones Act trial.

■ Unlike a Jones Act claim, unseaworthiness is "predicated without regard to fault or the use of due care." *Lee v. Pacific Far East Line, Inc.*, 566 F.2d 65, 67 (9th Cir.1977). A shipowner has an absolute nondelegable duty to provide a seaworthy vessel. *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 95, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946). Accordingly, the seaworthiness issue is treated like a breach of warranty, rather than the narrower duty-breach inquiry for negligence. *See In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir.1991). Also in contrast to a Jones Act claim, "[t]he standard of causation for unseaworthiness is a more demanding one and requires proof of proximate cause." *See Chisholm*, 679 F.2d at 62. "To establish the requisite proximate cause in an unseaworthiness claim, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir.)

(citations omitted), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). The jury found that the vessel was unseaworthy in a manner that proximately caused Brister's injury. This finding served as the basis for the award of damages to Brister and his wife.

■ A shipowner may, as AWI did here, try to limit its dollar liability for damages to the value of the vessel under 46 U.S.C.App. § 183. The court, not a jury, must determine whether the shipowner merits relief under this provision. In a limitation proceeding, once an injured seaman establishes that negligence or unseaworthiness caused his injuries, the burden shifts to the vessel owner to establish lack of privity or knowledge of the dangerous condition that caused the injury. *In re Farrell Lines, Inc.*, 530 F.2d 7, 10 (5th Cir.1976). The critical issue in the limitation proceeding, therefore, was whether AWI satisfied its burden of establishing that it did not have privity or knowledge of the dangerous condition.

"Privity or knowledge" implies some sort of "complicity in the fault that caused the accident." *Nuccio v. Royal Indem. Co.*, 415 F.2d 228, 229 (5th Cir.1969) (quoting *In re Read's Petition*, 224 F.Supp. 241, 251 (S.D.Fla.1963)). The district court ruled that the jury finding of no negligence in the Jones Act trial collaterally estopped it from finding that AWI had privity or knowledge in the limitations proceeding. Because "privity or knowledge" has no fixed meaning, though, a finding of no negligence may not necessarily require a conclusion that the shipowner lacked privity or knowledge.[2] The differences between the history and policy rationales of limitation of liability and negligence under the Jones Act have led to different applications of these concepts in our case law.

The question of "privity or knowledge must turn on the facts of the individual

---

**2.** As stated by Gilmore and Black:

"Privity or knowledge" ... are phrases devoid of meaning. They are empty containers into which the courts are free to pour whatever content they will. The statutes might as well say that the owner is entitled to exoneration from liability or to limitation of liability if, on all the equities of the case, the court feels that the result is desirable; otherwise not.

Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* 877 (2d ed. 1975).

case." *Gibboney v. Wright,* 517 F.2d 1054, 1057 (5th Cir.1975). In some circumstances, the presumption that an owner had privity or knowledge of negligence or unseaworthiness is conclusive. *See* 46 U.S.C.App. § 183(e) (conclusively imputing actual privity or knowledge of the master, superintendent or managing agent of a seagoing vessel to its owner). In other situations, an owner's burden to prove an absence of privity or knowledge can still be onerous, but not insurmountable.

■ For example, a corporate shipowner may be deemed to have constructive knowledge if the unseaworthy or negligent condition could have been discovered through the exercise of reasonable diligence. *See Spencer Kellogg & Sons, Inc. v. Hicks,* 285 U.S. 502, 52 S.Ct. 450, 76 L.Ed. 903 (1932) (deeming owner to have privity or knowledge because owner actually knew vessel was unseaworthy to run through ice and would have known of icy conditions on the river the morning of the accident "if he had used reasonable diligence"); *Verdin v. C & B Boat Co.,* 860 F.2d 150, 156 (5th Cir.1988) (finding that failure to repair safety chains for over two years and to replace nonfunctioning dagger pins breached warranty of seaworthiness and precluded limitation of liability); *In re Reichert Towing Line,* 251 F. 214, 217 (2d Cir.) (owner did not discharge burden of proving lack of privity or knowledge when unseaworthiness of vessel resulted from replacement of broken crank pin shaft with one of incorrect size several months before accident, and owner failed to show whether it knew of, or made any inquiry into, the proper size of crank pin shaft), *cert. denied,* 248 U.S. 565, 39 S.Ct. 9, 63 L.Ed. 424 (1918). The corporate owner, therefore, must overcome a presumption not only that its officers and managers had actual knowledge, but also that they should have known of the unseaworthy or negligent condition that caused the injury. *See In re Patton–Tully Transp. Co.,* 797 F.2d 206, 211 (5th Cir.1986).

■ Generally, a finding of negligence indicates complicity in the cause of the accident sufficient to make limitation unavailable. *See In re Read's Petition,* 224 F.Supp. at 251; *see also Verdin,* 860 F.2d at 156 (failure to maintain safety chains which caused hatch cover to slip and tugboat captain to fall to his death was "a continuing act of negligence" that precluded limitation of liability); *Hercules Carriers, Inc. v. Florida,* 768 F.2d 1558, 1563 (11th Cir.1985) (master's negligence in allowing pilot to maintain speed of thirteen knots when visibility was less than 500 feet, captain's negligence in failing to post a full-time lookout and to use proper turnover procedures, and shipowner's failure to provide an adequate training program for the crew substantiated finding of privity and knowledge). Nonetheless, even if negligence caused the seaman's injury, an owner can still limit its liability in at least two situations. First, "[w]here the acts of negligence result not from any lack of competence on the part of the crew, but rather are merely 'mistakes of navigation,' the shipowner is not precluded from the limitation of liability." *In re Hellenic Lines, Ltd.,* 813 F.2d 634, 638 (4th Cir.1987). Second, "[w]hether a corporation has 'privity or knowledge' of a negligent act may be determined on the basis of whether the negligent employee is sufficiently high in the corporate hierarchy to make his awareness that of the corporation." *Continental Oil Co. v. Bonanza Corp.,* 706 F.2d 1365, 1377 n. 16 (5th Cir.1983) (citing *Spencer Kellogg & Sons v. Hicks,* 285 U.S. 502, 52 S.Ct. 450, 76 L.Ed. 903 (1932)); *see also Coleman v. Jahncke Serv., Inc.,* 341 F.2d 956, 958 (5th Cir.1965) (clarifying that an employee's scope of responsibility, not the job title, determines whether to charge owner with privity or knowledge), *cert. dismissed sub nom. Jahncke Serv., Inc. v. Greater New Orleans Expressway Comm'n,* 382 U.S. 967, 86 S.Ct. 525, 15 L.Ed.2d 463, *cert. denied,* 382 U.S. 974, 86 S.Ct. 538, 15 L.Ed.2d 465 (1966).

A substantial obstacle arises for a shipowner when the claimant proves that an unseaworthy condition which existed at the start of the voyage proximately caused his injury. This is because the owner's absolute, nondelegable duty to provide a sea-

worthy vessel [3] converges with its duty "to use reasonable means to acquire knowledge calculated to inform [itself] of conditions likely to produce or contribute to unseaworthiness."[4] The Eleventh Circuit considered such a situation in *Villers Seafood Co. v. Vest*, 813 F.2d 339 (11th Cir. 1987). It concluded that "[a] shipowner may not limit his liability under the limitation act if his ship is unseaworthy due to equipment which was defective at the start of a voyage. He is charged with knowledge of the existence of that condition." *Id.* at 343 (citation omitted). While we do not question the Eleventh Circuit's conclusion that the specific facts presented in *Villers Seafood* (i.e., the apparentness of the unseaworthy condition) compelled a finding of privity or knowledge to preclude limitation of liability, we do not, on the evidence presented in this case, believe that a finding of unseaworthiness at the inception of a voyage should automatically foreclose AWI from the opportunity to prove an absence of privity or knowledge in the limitation proceeding.[5] We are not certain that the Eleventh Circuit meant to state that limitation is precluded *whenever* an unseaworthy condition exists at the start of a voyage; however, to the extent that *Villers Seafood* can be read to stand for such a general proposition, it is inconsistent with the existing law in this circuit. *See Gibboney*, 517 F.2d at 1058 (shipowner entitled to limitation despite existence of unseaworthiness at start of voyage because he could not have inspected defectively secured fuel tank without tearing out metal, and he

could reasonably rely on builder's past assurances that it would be repaired).

■■■■ In contrast to the numerous potential avenues of inquiry that can determine privity or knowledge in a limitation proceeding, the Jones Act negligence inquiry focuses only on whether the employer knew or should have known of the defect at the time of the accident. An inquiry into whether the defect existed at the inception of a voyage, therefore, would be irrelevant. This distinction between negligence under the Jones Act and privity or knowledge for purposes of limitation makes collateral estoppel especially inappropriate in this case. Brister's principal argument during the limitation trial, and on appeal, is that the defect in the mat must have existed at the beginning of the voyage. This evidence would have provided Brister with his strongest argument against limiting AWI's liability. Brister did not present this argument to the jury at the Jones Act trial, nor would he have been allowed to do so, because AWI's knowledge of the defect at the beginning of the voyage was not relevant to AWI's liability. If the jury's finding on negligence required the court to find that AWI was entitled to limitation, Brister could never present his most persuasive evidence to refute AWI's entitlement to limitation. The district court erred by equating negligence under the Jones Act with privity or knowledge for the purposes of limitation in this case and should not have treated the verdict on negligence as conclusive for purposes of limitation.[6]

---

**3.** *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 95, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946).

**4.** *In re Lloyd's Leasing Ltd.*, 764 F.Supp. 1114, 1133 (S.D.Tex.1990) (citing *In re Bankers Trust Co.*, 651 F.2d 160, 171 (3d Cir.1981).

**5.** The facts of each particular case may dictate a different result. *See, e.g., In re Bankers Trust Co.*, 651 F.2d at 171 (limiting liability despite finding presence of unseaworthy condition at start of voyage because turbine damage could have been detected only through performance of destructive testing which was not required); *Gibboney*, 517 F.2d at 1058 (individual shipowner entitled to limitation despite existence of unseaworthiness at start of voyage due to defectively secured fuel tank because he had received assurances from builder that tank would be

properly secured and tank was not accessible for inspection without tearing out metal); *In re Lloyd's Leasing Ltd.*, 764 F.Supp. at 1133 (limiting liability despite finding that ship was unseaworthy at start of voyage because shipowner could have discovered builder's welding defect only by conducting destructive testing which was not required).

**6.** In so holding, we leave intact Judge Brown's observation in *In re Double D Dredging Co.*, 467 F.2d 468, 469 n. 2 (5th Cir.1972), that a finding of privity or knowledge of unseaworthiness in a limitation proceeding, in some circumstances, may estop a jury from deciding the issue of negligence in the Jones Act trial. Judge Brown remarked that although the trial judge "came dangerously close to ruling that the shipowner

The district court alternatively held that AWI was entitled to limitation even if the verdict on Brister's Jones Act claim had not disposed of the issue. The court concluded that Brister could not "invoke the rule of *Villers Seafood*" because, contrary to Brister's assertion, "there is no evidence supporting the proposition that [the defect in the mats] existed at the time the rig left on the voyage." Brister argues that the district court clearly erred in reaching this conclusion.

As outlined above, once a claimant in a limitation proceeding shows that negligence or unseaworthiness caused his injury, the owner must show that it had no privity or knowledge of that cause of injury to limit its liability under § 183. Brister points to record testimony to sustain his claim that AWI did not bear its burden. The district court found that the fact that AWI denied the defective mat condition ever existed supported the conclusion that AWI neither knew nor should have known of the gap between the mats. Brister claims that AWI President Jack McClanahan's testimony reveals that AWI, in fact, did know of the condition of the mats. McClanahan testified that Rig # 4 went back into service with the rotary mat from Rig # 7.[7] At another point in his testimo-

ny, McClanahan also acknowledged that he knew the rotary mat on Rig # 7 did not fit the remainder of the drill floor on Rig # 4.[8] On the other hand, the district court relied on McClanahan's testimony denying that a gap existed between the rotary mat and the floor mat on Rig # 4 on the day of the accident, and stating that he was unaware of any problem with the alignment of the mats.

■ Although the testimony relied on by the district court is relevant, demonstrating a lack only of actual knowledge does not meet the owner's burden to show a lack of privity or knowledge. Privity or knowledge does not necessarily require a showing of actual knowledge. It is deemed to exist if the shipowner has the means of obtaining knowledge, or if he would have obtained the knowledge by reasonable inspection. *China Union Lines Ltd. v. A.O. Andersen & Co.*, 364 F.2d 769, 787 (5th Cir.1966), *cert. denied*, 386 U.S. 933, 87 S.Ct. 955, 17 L.Ed.2d 805 (1967). Knowledge is not only what the shipowner knows, but what he is charged with discovering. *Avera v. Florida Towing Co.*, 322 F.2d 155, 166 (5th Cir.1963). Brister argues that AWI would have discovered the dangerous condition of the mats if it had conducted a reasonable inspection of the rig.[9] Thus, he

was guilty of negligence" in the limitation hearing, he fell short of making such a finding. *See id.* Significant to this determination was the fact that the trial court did not accompany its denial of limitation with any findings of fact or conclusions of law. *Id.* at 469. Obviously, the focus of the inquiry in *Double D*, as here, remains on the identity of the issue at stake in the current litigation, whether it actually has been previously litigated, and whether it was a critical and necessary part of the prior judgment. *Stovall v. Price Waterhouse*, 652 F.2d 537, 540 (5th Cir.1981). Accordingly, Brister cannot be precluded from litigating the issue of privity or knowledge in this case because the facts that could most effectively rebut an absence of privity or knowledge under the limitation act were not before the jury in the Jones Act trial.

7. McClanahan's testimony was as follows:

Q. Assume that. My next question is, between the date of September of '88 and December 5 of '88 this Rig # 4 had been stacked, that is, was out of service or in the harbor, isn't that correct?
A. It was stacked, not working, yes sir.

Q. And then at some point after October, this boat then was brought out again to go to work, and it is during that job that Mr. Brister was injured, isn't that true, sir?
A. The rig went back to work, and that's when Mr. Brister alleged his accident, yes, sir.
Q. So that it is true, then, is it not, that the mat on four which was brought from seven had been put on there before the job that Mr. Brister was on had begun, isn't that true?
A. Yes, sir.

8. Q. So that, isn't it true, that the mat on seven does not fit exactly the surrounding area? I know it fits the rotary, but insofar as the remainder of the drill floor and its relationship to the drawworks and to the brakes and to the other things, that mat simply doesn't fit those contours; does it, sir?
A: Yes, sir.
Benny Floyd, the driller aboard Rig # 4, also testified that the mats did not join together properly.

9. Brister points to evidence in the trial record to support this argument. First, Joe Kelly, the toolpusher in charge of Rig # 4, testified that

asserts, AWI was not entitled to limit its liability.

AWI does not refute the factual evidence before the court. Instead, it makes the legal argument that the limitation statute does not apply to drilling rigs because they are not "seagoing vessels" as defined in 46 U.S.C.App. § 183(f). In making this argument, AWI presumably refers to § 183(e), which codifies the conclusive presumption that the knowledge of an agent of an owner at the start of a voyage is within the privity or knowledge of the owner of a seagoing vessel. We do not find, on the facts thus far presented, that this provision applies to Brister's case. Furthermore, courts consistently have applied § 183 more liberally than AWI's proposed interpretation would allow. *See, e.g., Coleman,* 341 F.2d at 960 (barge); *Avera,* 322 F.2d at 166 (tug).

▆▆ AWI also showed that it had adequate safety inspection procedures in place to discern dangerous conditions. While these procedures probably led the jury to conclude that AWI was not negligent under the Jones Act, the shipowner's absolute, nondelegable duty to provide a seaworthy vessel indicates that AWI, even if it did not actually know of the unseaworthy condition, should have known of the condition if it could have been detected upon reasonable inspection.

▆▆ Brister alleges that the mats did not mesh properly because the rotary mat had been taken from another rig. No other explanation for the defect in the mats was ever suggested. The improper mats were installed on Rig # 4 about three months before the accident. Save for McClanahan's denial of actual knowledge of the gaps in the matting, the evidence otherwise indicates that the defective condition existed at the start of the voyage. "A finding is 'clearly erroneous' when al-

though there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *accord Lewis v. Timco, Inc.,* 736 F.2d 163, 166 n. 2 (5th Cir.1984). The record in this case leads us to conclude that the district court clearly erred when it found *no* evidence to indicate that the defective condition of the mats existed at the start of the voyage.

There does appear to be some evidence that would support the conclusion that the defective condition of the mats existed at the start of the voyage; there is also some evidence that would operate against such a conclusion. Therefore, the district court should make a fact finding on this issue. If it determines that the defective condition was present at the start of the voyage, the court should decide if the defect was readily discoverable. If it finds this to be so, then AWI is not entitled to limit its liability. *See Gibboney,* 517 F.2d at 1058.

### B. *The Crown Zellerbach clause*

In *Crown Zellerbach Corp. v. Ingram Industries, Inc.,* 783 F.2d 1296 (5th Cir.), *cert. denied,* 479 U.S. 821, 107 S.Ct. 87, 93 L.Ed.2d 40 (1986), we held that the insurance contract must allow the insurer to take advantage of the owner's limitation of liability. Since then, inclusion of *"Crown Zellerbach"* clauses has become routine. Brister argues that the district court erroneously found that the insurer could receive the benefit of limitation and that the "failure to change the insurer's name in the rules included in the cover note does not affect the result."

The insurance underwriter's cover note referred to the insurer by its *former* name instead of by the name under which it

---

AWI did not avail itself of an ideal opportunity to replace the defective mat when Rig # 4 was "stacked" the month before leaving on the voyage during which Brister was injured. Second, Brister emphasizes that AWI presented no evidence indicating that it performed any safety inspections on Rig # 4 from October through December 1988. The person primarily responsible for reporting information about potentially hazardous conditions was unable to carry out his job duties because he was receiving treatments for cancer beginning in October 1988 and continuing through the date of Brister's accident. AWI hired a part-time safety consultant during this period, but he was not a corporate employee and did not testify at trial.

issued the book of rules actually provided to AWI. This rule book, as Brister admits, contained a *Crown Zellerbach* clause. Brister asserts that under Louisiana law, the discrepancy between the name in the cover note and the name imprinted on the book of rules prevented the rules from being incorporated by reference into the insurance policy.[10]

■■■ "West of England Ship Owner's Mutual Protection and Indemnity Association (Luxembourg) Ltd." is the former name of AWI's insurer. In 1985, the insurer changed its name to "West of England Ship Owner's Mutual Insurance Association (Luxembourg) Ltd." ("West of England"). Southern Marine and Aviation Underwriters, Inc., the insurance broker, sent a book of rules bearing the new logo and name along with a cover note to AWI providing coverage for AWI and Rig # 4 for the accident at issue. The cover note, under "conditions," states:

> Protection and indemnity as per the Rules of West of England Ship Owners Mutual Protection and Indemnity Association (Luxembourg) ... as attached.

In holding that West of England was entitled to avail itself of AWI's limitation of liability, the district court relied on uncontroverted testimony that aside from the minor alteration in name, the corporate entity issuing the insurance remained unchanged. We agree with the district court that the underwriter's inadvertent reference to the insurer's former name should not determine whether West of England can avail itself of AWI's limitation of liability. The rules that AWI received were the current rules for the company that provided the insurance and they contained a

*Crown Zellerbach* clause. Under these circumstances, we concur that West of England may benefit from AWI's limitation of liability, if, after remand, the district court determines that AWI qualifies for limitation.

### C. *Past medical expenses in addition to limitation fund*

AWI cross-appeals the district court's supplemental decision to award Brister "cure" in addition to the limitation fund. The maintenance and cure award at issue in this appeal was Brister's past medical expenses amounting to $40,747.52 that AWI previously had refused to pay.[11] AWI maintains that because at least part of the jury award was for past medical expenses, and the amount of the cure award did not exceed the limitation fund, the district court could not properly require payment in addition to the limitation fund. Although AWI concedes that Brister may be entitled to maintenance and cure in excess of the limitation fund at some future point in time, it claims that the district court could not properly take that possibility into consideration now.

■■■ A seaman's right to maintenance and cure is implied in the employment contract between seaman and shipowner.[12] It "in no sense is predicated on the fault or negligence of the shipowner." *Aguilar v. Standard Oil of New Jersey*, 318 U.S. 724, 730, 63 S.Ct. 930, 934, 87 L.Ed. 1107 (1943). Thus, an owner of a vessel is almost automatically liable for the cost of medical treatment and basic living expenses when a seaman in its employ is injured. In contrast, a determination of a shipowner's right to limitation of liability

---

**10.** Brister refers to Louisiana Revised Statute Title 22, § 628, which states:

> No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance.
>
> \* \* \* \* \* \*
>
> Any agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be deemed to be physically made a part of the policy or other written evidence of insurance, within the meaning of

this section, whenever such written agreement makes reference to such policy or evidence of insurance and is sent to the holder of such policy or evidence of insurance....

**11.** AWI observes, and Brister does not refute, that it has paid and continues to pay Brister's maintenance on a timely basis, and that it has paid all other medical expenses incurred in connection with Brister's accident.

**12.** *See* 1B Steven Bellman et al., *Benedict on Admiralty* § 42, at 4–7 (7th ed. 1991).

focuses on whether the shipowner can be held at fault for the seaman's injury. *See Nuccio*, 415 F.2d at 229.

 A maintenance and cure claim typically accompanies other claims, such as the Jones Act and unseaworthiness claims in this case, which allow for a more liberal recovery. As both parties agree, a shipowner cannot limit its liability for maintenance and cure. It may bring a limitation action only in response to a finding of negligence or unseaworthiness. As a result, an award for maintenance and cure is independent of these other sources of recovery.

Nevertheless, a seaman clearly can receive only one recovery for his medical expenses. Since the element of past medical expenses "is inherent in each of the two types of recoveries, there must not be a duplication in the final award whether it is done by a Judge sitting in admiralty, by a jury hearing both phases where jurisdiction exists, or partly by the jury and partly by the Judge." *Vickers v. Tumey*, 290 F.2d 426, 435 (5th Cir.1961); *see also Fitzgerald v. United States Lines*, 374 U.S. 16, 19 & n. 6, 83 S.Ct. 1646, 1649 & n. 6, 10 L.Ed.2d 720 (1963) (recognizing the overlap in potential recoveries under the Jones Act and a maintenance and cure claim, and the need to avoid duplication of damages). AWI asserts that because the limitation fund is greater than Brister's medical expenses, the district court effectively granted Brister a double recovery.

 The record indicates that the district court was aware that the Jones Act award and the cure award could have been potentially duplicative. When, during deliberations, the jury asked for the amount of Brister's medical expenses, the district judge commented that he generally would have told the jury to exclude the medical expenses, ostensibly because they would fall under maintenance and cure, but added that he could not do so in this specific case because the reasonableness of the medical

expenses was in dispute. The court entered judgment according to the jury's lump sum verdict of $385,000 in damages for Brister and $25,000 to his wife for loss of consortium.

After the limitation proceeding, the court entertained Brister's motion for a supplemental judgment of $40,747.52 to cover the amount that AWI owed to Brister as cure. The court acknowledged that the limitation judgment capped AWI's liability at $108,635. Reasoning that the cure award was not subject to limitation, it subtracted the medical expenses from the $385,000 verdict for Brister and held that the remaining $344,252.48 was subject to limitation. On this basis, it granted the supplemental award of $40,747.52 to Brister.

We agree with AWI that Brister would not be entitled to a double recovery for past medical expenses. However, a district court "is entitled to consider the extent to which the jury award probably included" amounts which are the substantial equivalent of cure. *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 404 (5th Cir.1979). Although the district court's consideration of the amount of the award attributable to cure would have been more straightforward if it had excluded the cure award when it originally entered the judgment, rather than modifying it after the limitation proceeding, we do not find that the district court erred in concluding that the medical expenses reflected in the jury award were not subject to the limitation fund.[13]

### D. *Interest on the damages*

Brister contends that the trial court abused its discretion by granting him interest from the date of the judgment rather than from the date of injury, at least as pertains to the portion of the award that is attributable to past damages. We have determined that the supplemental judgment for past medical expenses was inappropriate. We still must address whether the district court erred by failing to award

---

**13.** If, on remand, the district court finds that AWI is not entitled to limit its liability, we trust that the final judgment will reflect the fact that

Brister's past medical expenses were paid in the separate award.

prejudgment interest on the original judgment as well.

■ "As a general rule, prejudgment interest should be awarded in admiralty cases—not as a penalty, but as compensation for the use of funds to which the claimant was rightfully entitled." *Noritake Co.*, 627 F.2d at 728. This general rule is limited by the proposition that a seaman may receive prejudgment interest for past but not future damages. *Verdin,* 860 F.2d at 158. Therefore, we must examine whether the district court abused its discretion in failing to award prejudgment interest on at least some portion of the original judgment that could properly be attributed to past damages.

■ The district court did not explain its denial of prejudgment interest. However, we infer from the record that the jury verdict form's failure to itemize past and future damages in providing the sum of damages due to Brister made the court reticent to apportion the damages itself in order to award pre- and post-judgment interest. The record does not show that Brister objected to the verdict form, which made no distinction between past and future damages. We find that the district court acted within its discretion in refusing to grant prejudgment interest to all or any portion of the jury's lump sum damages award. Although it is clear that some part of the original award was for past damages, the district court was not compelled to speculate as to how the jury would have apportioned the damages if it had been asked to do so. Therefore, we affirm the decision of the district court on this issue.

## III. CONCLUSION

We VACATE and REMAND the district court's decision limiting AWI's liability, and AFFIRM the district court's decision on the remaining issues.

AFFIRMED in part; VACATED in part; and REMANDED for findings consistent with this opinion.