In re Ira KAY and Esther Bee Kay, faw Developers Clean-Up, Inc. and Uriarte Clean-Up Service, Inc., Debtors.

LABORERS CLEAN–UP CONTRACT ADMINISTRATION TRUST FUND, etc., Plaintiffs,

v.

Ira KAY, etc., Defendants.

Bankruptcy No. SA 83–02307 PE.
Adv. No. SA 83–2597.

United States Bankruptcy Court,
C.D. California.

April 2, 1986.

Barry Jablon, Cox, Castle & Nicholson, Los Angeles, Cal., for plaintiffs.

Steven D. Atkinson, Atkinson, Andelson, Loya, Ruud & Romo, Long Beach, Cal., for defendant.

## MEMORANDUM OF DECISION

PETER M. ELLIOTT, Bankruptcy Judge.

Plaintiff seeks an order that its district court judgment for $555,427.23 against Ira

Kay, the debtor, is not dischargeable. The judgment was predicated on the submission of knowingly false statements of hours worked by the employees of Uriarte Clean-Up Service, Inc. to the Laborers Clean-Up Contract Administration Trust Fund. Defendants Kay, Roland and Frank Uriarte and Joe Mercado participated in the submission of the false statements on behalf of Uriarte Clean-Up Service, Inc. The district court held that each of these individuals was the alter ego of the defendant corporation. It also ruled that all defendants were jointly and severally liable on the judgment. The judgment, except for the amount of attorneys' fees, was affirmed. *Laborers Clean-Up Contract Administration Fund v. Uriarte Clean-Up Service, Inc., et al.*, 736 F.2d 516 (9th Cir.1984).

## ISSUES

Was the plaintiff damaged by reason of false representations of the debtor and his associates within the meaning of 11 U.S.C. § 523(a)(2)?

If so, are the false statements of the Uriates and Mercado attributable to Kay for purposes of this dischargeability complaint?

## THE RECORD

■ Plaintiff has submitted the detailed findings of fact and conclusions of law of the district judge, together with the trial transcript and all of the exhibits used at the trial. Plaintiff also submitted the opinion of the circuit court affirming the judgment. It is proper that I consider that record, mindful that the judgment of the district court is not res judicata on the issue of dischargeability. *In re Houtman*, 568 F.2d 651, 654 (9th Cir.1978). I therefore overrule defendant's objections to plaintiff's request that I take judicial notice of the record of the district court. In addition, I received the testimony of the debtor Ira Kay.

## DISCUSSION

To determine if the conduct of the defendant would except his liability to plain-tiff from his discharge in bankruptcy, I turn to the test enunciated in *In re Houtman, Id.* at 655:

> [W]e have adopted a five-part test for determining when a debt is nondischargeable under this provision. That test is:
>
> (1) The debtor made the representations;
>
> (2) That at the time he knew they were false;
>
> (3) That he made them with the intention and purpose of deceiving the creditor;
>
> (4) that the creditor relied on such representations;
>
> (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

The court in *Houtman* was referring to § 17(a)(2) of the former Bankruptcy Act. That section provided that a discharge released a bankrupt from his provable debts except such as, "(2) are liabilities for obtaining money or property by false pretenses or false representations, ..." Ira Kay filed under the Bankruptcy Reform Act of 1978 and his conduct is to be tested under 11 U.S.C. § 523(a)(2) which provides that a discharge does not discharge an individual debtor from any debt incurred by reason of false pretenses, a false representation, or actual fraud. It is clear that § 523(a)(2) is an adaptation of former § 17(a)(2) and that the test in *In re Houtman* applies.

Judge Real found that the reports submitted on behalf of Uriarte Clean-Up Services knowingly misstated the number of hours worked by covered laborers and that the defendants, including Ira Kay, participated in the filing of the false reports. Judge Real also found that the defendants knowingly failed to register projects on which their laborers performed clean up work and, on other job registration forms, they knowingly misrepresented the total square footage of the projects. He also found that the defendants knew that the failure to report and pay contributions was to evade payment of funds lawfully due

and also to conceal breaches of labor agreements with various unions which would subject them to picketing and other lawful actions by the various unions.

The plaintiff is an enforcement trust set up to collect and administer on behalf of construction laborers, pension, health and welfare and vacation trust funds. The contractor's liability is determined by the square footage of the construction cleaned by the defendants' employees. Under contractual agreements, the defendants were required to register a job when they successfully obtained a contract and to include total square footage involved. Under a formula in the contracts, it was agreed that the clean up of a certain stated area required a certain number of hours and that therefore there was an objective test of the contributions required by the employer. When the defendants knowingly failed to register new jobs with the plaintiff, or knowingly underreported the amount of square footage on the jobs, or knowingly misstated the number of hours worked by covered laborers, they knowingly deprived their employees of monies that otherwise would be available for pensions, vacations, and health and welfare.

Turning to the test in *Houtman,* it is clear to me and I so find, that the debtor and the other defendants made representations (hours worked, understatement of square footage, and failure to register jobs); that the debtor and the other defendants knew the representations were false; that the representations were made for the purpose of deceiving the plaintiff; that the plaintiff relied on the representations (by not reporting the defendants' failure to make contributions which would in turn have resulted in a labor strike against the defendants); and that the employee beneficiaries of the plaintiff trust fund administrator sustained damages as the proximate result of the defendants' representations.

I must next consider whether the false representations of the debtor's associates in Uriarte Clean-Up Service, Inc. and Developers Clean-Up, Inc., are attributable to debtor Kay for the purposes of this dischargeability proceeding.

Under the Bankruptcy Act of 1898, the courts held that the acts of others could be imputed, pursuant to accepted legal principles, to the bankrupt for the purpose of determining dischargeability of a debt under § 17. *See Strang v. Badner,* 114 U.S. 555, 5 S.Ct. 1038, 29 L.Ed. 298 (1885); *McIntyre v. Kavanaugh,* 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916); *In re Moore,* 1 B.R. 52 (Bankr.C.D.Cal.1979); 3 *Collier on Bankruptcy* ¶ 523.08 at 523–52 (15th ed. 1985). The debtor's discharge under § 14 of the 1898 Act, however, was not to be denied solely on the basis of the acts of others although this was open to some dispute. *See Frank v. Michigan Paper Co.,* 179 F. 776 (4th Cir.1910); *In re Lovich,* 117 F.2d 612 (2nd Cir.1941); *In re Maloof,* 2 F.2d 373 (N.D.Ga.1927); 4 *Collier on Bankruptcy,* ¶¶ 727.02[4], 727.03[2] (15th ed. 1985).

The counterpart to § 17 in the Bankruptcy Reform Act of 1978 is 11 U.S.C. § 523. However, language in § 523(a)(2)(B) requiring specific acts by the debtor which was not found in § 17, as well as policy concerns, have led some courts to hold that the acts of agents or partners cannot be charged to an innocent debtor for debts based upon a false financial statement submitted to a creditor. Instead, at least reckless acquiescence in the agent's or partner's publication of the financial statement is necessary. *In re Gray,* 22 B.R. 676 (Bankr.W.D.Wis.1982); *In re Anderson,* 29 B.R. 184 (Bankr.N.D.Iowa 1983); *accord In re Walker,* 726 F.2d 452 (8th Cir.1984) (relying on cases interpreting discharge denial under § 14 of the 1898 Act). A similar argument might be made concerning the exception to discharge for debts arising from "willful and malicious injury *by the debtor* to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (emphasis added).

The Ninth Circuit, however, recently considered the issue of vicarious responsibility in the context of 11 U.S.C. § 523(a)(6). It held that the knowledge and intent of a

debtor partner who willfully converted property in the ordinary course of business was attributable to an innocent debtor partner under common principles of partnership law. *In re Cecchini*, 780 F.2d 1440 (9th Cir.1986).

■ *Cecchini* evidences the Ninth Circuit's decision to follow the cases under § 17 of the 1898 Act holding the innocent bankrupt vicariously responsible for the acts of others in construing dischargeability under § 523 of the 1978 Act. Although the analysis in *Cecchini* was regrettably brief given the central importance of discharge issues to bankruptcy law, I am bound by that decision and must analyze the acts of the Uriarte brothers and Mercado to determine if they may be imputed to Kay under existing principles of law.

Because the district court did not indicate whether the finding of joint and several liability rested on the determination of alter ego status, I examine the findings independently. My analysis begins with the alter ego finding:

> The effect of applying the alter ego doctrine, of course, is that the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment or otherwise, both are equally bound.

*Allied Chemical Corp. v. Randall*, 321 F.2d 320 (7th Cir.1963) (quoting *Shamrock Oil and Gas Co. v. Ethridge*, 159 F.Supp. 693 (D.Colo.1958)).

■ The false statements of the Uriartes and Mercado, all officers, directors, and shareholders of the corporation, were acts of the corporation because "[a] corporation acts through its directors, officers and agents." 1 *Fletcher Cyclopedia Corporations* § 30 (1983). The record is devoid of any facts indicating that the Uriartes and Mercado were not acting within the scope of their authority or were acting outside the ordinary course of the corporation's business. Thus, the acts of the Uriartes and Mercado on behalf of the corporation are attributable to Kay. *See also In re*

*Kasler*, 611 F.2d 308, 309 n. 3 (9th Cir.1979) ("... if the statements were made ... by ... his co-alter-ego and 'partner,' Kasler would be nondischargeably liable ... [because the statements would be imputed to him]").

■ Alternatively, the acts of the Uriartes and Mercado may be charged to Kay because they were adjudged jointly and severally liable on the judgment:

> Directors are not liable for the wrongful acts of their co-directors if they do not connive with them and if ordinary care on their part would not have averted the loss; nor are the executive officers responsible for the neglect of duty, negligence, or misconduct of each other in their official relations, without proof of joint participation.
>
> . . . .
>
> Where two or more corporate officers join or participate in a wrongful act, they are, as a general rule, jointly and severally liable.

18B Am.Jur.2d, *Corporations* §§ 1719, 1720 (1985). *See also Harlem River Consumers Coop., Inc. v. Associated Grocers of Harlem, Inc.*, 408 F.Supp. 1251 (S.D.N.Y.1976). The joint participation of all the individual defendants in filing false reports or not disclosing new contracts appears to have been the reason for imposition of joint and several liability. Imputed responsibility for the acts of another is implicit in the concept of joint and several liability. Each joint and severally liable defendant is liable for the total harm caused by all of the defendants. Any apportionment of liability will occur by way of a contribution suit between the defendants, assuming a right to contribution exists.

For the reasons stated, I conclude that the false statements of the Uriarte brothers and Mercado are chargeable to Kay for purposes of this dischargeability complaint and that the judgment is not dischargeable under 11 U.S.C. § 523(a)(2).

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum of de-

cision shall constitute my findings of fact and conclusions of law.