United States Court of Appeals,

Fifth Circuit.

No. 93-2523.

RECOVEREDGE L.P., Plaintiff-Appellee,

v.

Gary D. PENTECOST, et al., Defendants,

David G. Carpenter, Defendant-Appellant.

Feb. 17, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, WIENER, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

David G. Carpenter appeals the district court's judgment and order determining that a breach of contract judgment against him is nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A) (1988). We REVERSE and REMAND.

I

In the early 1980's, Dr. David Carpenter, a practicing family physician, became involved as an investor in a real estate development project. Carpenter invested in the project at the behest of his brother-in-law, Gary Pentecost, a real estate developer and mortgage investor. Together with Pentecost's business associate, J.B. Westmoreland, Pentecost and Carpenter formed Houston Storage, Inc., ("Houston Storage") to purchase a warehouse. Houston Storage's articles of incorporation listed Carpenter as President and Director, and Gary Pentecost as Vice President, Secretary, and Treasurer. Pentecost, Westmoreland, and Carpenter each held one-third of Houston Storage's shares.

Houston Storage later purchased a 3.77-acre parcel of land from Universal Savings Association ("Universal Savings").[1] Universal Savings financed most of the purchase price, accepting a ten-percent down payment and a $1.6 million promissory note. In exchange, Houston Storage agreed to sell pieces of the property ("pad sites") and apply the proceeds first to expenses connected

[1]The parcel was part of a larger tract that Universal Savings held after having foreclosed on it.

with the sale and interest on the note, and then to the principal due on the note. On behalf of Houston Storage, Carpenter executed the closing documents for the sale, including the promissory note. Carpenter also signed a personal guarantee on the note. In his capacity as secretary, Pentecost acknowledged the documents on Houston Storage's behalf. Pentecost also made the required down payment.

The transaction was ostensibly designed to enable Houston Storage to sell the pad sites for commercial development. In fact, the transaction was driven at least in part by ulterior motives. According to the Resolution Trust Corporation ("RTC"), which later sued Pentecost, Carpenter, and Westmoreland, the transaction was primarily designed to remove a nonperforming asset, the real estate, from Universal Savings' books and replace it with what appeared to be a good loan to Houston Storage. The scheme was structured through Houston Storage, the RTC alleged, in order to circumvent "loans-to-one-borrower" regulations, which would have prohibited Universal Savings from lending the money directly to Pentecost.[2] Finally, although Houston Storage agreed to use the proceeds from the pad site sales to pay down the promissory note, some of the proceeds were diverted, with the cooperation of Universal Savings officers, to pay down other, unrelated loans that Pentecost had at Universal Savings.

In May of 1988, after it had been placed under the supervision of the Texas Savings and Loan Department, Universal Savings sued numerous individuals and business organizations in connection with six allegedly fraudulent transactions. The Houston Storage transaction was one of the six, and the complaint named Carpenter as a defendant in connection with that transaction.[3]

Two years later, after Universal Savings had filed its Third Amended Complaint, the RTC, as conservator for Universal Savings, was substituted as the plaintiff in Universal Savings' suit against

---

[2]The "loans-to-one-borrower" limitation in effect at the time of the Houston Storage transaction limited the amount of money a savings and loan institution could lend to a single borrower in proportion to the institution's withdrawable accounts and net worth. 12 C.F.R. § 563.9-3 (1985) (current version at 12 C.F.R. § 563.93 (1994)). According to the RTC, Universal Savings' loans to Pentecost were at or close to this limit.

[3]The complaint named Pentecost and Westmoreland as defendants in connection with all six transactions.

Carpenter.[4]  The RTC then filed a Fourth Amended Complaint, the last one filed before trial.  In the complaint, the RTC named Carpenter in the following four counts:  civil conspiracy, common law fraud, unjust enrichment, and breach of contract.  All of the RTC's claims against Carpenter related solely to the Houston Storage transaction.[5]

Then, just before trial was scheduled to begin, Carpenter and his wife filed for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701-766 (1988).  The RTC pro mptly filed an emergency motion in the district court to withdraw the reference of the RTC's prospective bankruptcy claim, lift the automatic stay, and consolidate its bankruptcy claim with its civil case against Carpenter.[6]  The district court granted the motion and denied Carpenter's emergency motion to reconsider.  The consolidated case then proceeded to trial.

At trial, Carpenter testified that he had participated in the Houston Storage transaction only as an investor, understanding the purpose of the project to be the purchase and sale of commercial real estate.  He further testified that Pentecost handled the books, wrote the checks, and was

---

[4]The Texas Savings and Loan Department had placed Universal Savings in conservatorship in 1988, and the RTC became Universal Savings' conservator pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1441a(b)(6) (Supp.1994).  Later in the course of the litigation, the "RTC as Receiver for Universal Federal Savings Association" was substituted as plaintiff.

[5]Several months before trial, the district court entered a default judgment against Westmoreland as a sanction for his "willful failure to participate in the discovery process." Pentecost remained a defendant on multiple counts in connection with all six transactions.

[6]Carpenter objected to the RTC's motion in part on the grounds that no bankruptcy court proceeding yet existed for the district court to withdraw.  According to Carpenter, the RTC had not yet filed a proof of claim in the Carpenter bankruptcy case, and the Carpenters therefore could not have objected to it.  Section 157(d) of the Bankruptcy Code provides, in relevant part:  "The district court may withdraw, in whole or in part, any case or proceeding referred under this section ... for cause shown."  11 U.S.C. § 157(d) (1988).  The district court was unclear whether to withdraw the whole bankruptcy case or simply the RTC's "claim:"

> To the extent I am required to remove the entire matter, I have done that.  To the extent I only need under Section (d) to remove this particular claim, I have done that.  So what I have done, orally I have removed the entire proceeding.  I have removed this particular claim, RTC versus Carpenter from that.  Retained that claim and remanded the balance of the Carpenters' bankruptcy proceeding back to the bankruptcy court.

Carpenter does not appeal the district court's withdrawal of the RTC's "prospective" claim.

generally responsible for making interest and principal payments on the promissory note. Carpenter denied having any knowledge that proceeds from the pad sales were used to pay down some of Pentecost's other loans from Universal Savings. He did, however, concede that he had failed to pay the promissory note.

At the close of the evidence, the RTC filed a "Supplement to Plaintiff's Complaint (Complaint to Determine Dischargeability of Debt)" alleging that Carpenter's debt on the promissory note was nondischargeable under section 523(a)(2) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2) (1988).[7] As factual allegations supporting nondischargeability, the RTC simply incorporated the allegations contained in its Fourth Amended Complaint.

The RTC then submitted only the conspiracy to defraud count to the jury, apparently deciding to abandon its common law fraud and unjust enrichment claims against Carpenter. During trial, the court had directed a verdict against Carpenter on the RTC's breach of contract claim for nonpayment of the promissory note.

The jury ultimately rendered a special verdict finding that all of the Houston Storage transaction defendants *except Carpenter* had engaged in a conspiracy to defraud the RTC as receiver for Universal Savings. Consistent with this finding, the jury awarded punitive damages against Pentecost and Houston Storage but none against Carpenter. After the jury rendered its verdict, the RTC successfully moved the court to accept the jury's verdict. At no time either during or after trial did the RTC file a motion for judgment as a matter of law on its conspiracy claim against Carpenter. To the contrary, the RTC moved for entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, which the court entered. The court held Carpenter jointly and severally liable with Pentecost, Westmoreland, and Houston Storage for actual damages of approximately $1.6 million, pre- and postjudgment interest, $110,000 in attorneys' fees, and costs.[8] The RTC did not

---

[7]Section 523(a)(2) provides that debts for money obtained by "false pretenses, a false representation, or actual fraud" are not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(2)(A) (1988).

[8]Although the judgment is not explicit in this regard, the record reveals that Carpenter's liability stems from the court's directed verdict on the RTC's breach of contract claim against him. Pentecost's and Houston Storage's liability, on the other hand, is based on the jury's verdict on the

appeal the jury's verdict on its conspiracy claim against Carpenter, and Carpenter did not appeal the court's directed verdict on the RTC's breach of contract claim.

A full year after the civil conspiracy trial, the RTC requested, and the district court ordered, briefing on the dischargeability issue. Carpenter argued that his debt to the RTC was dischargeable because the jury found that he had not committed fraud and because the RTC had not proven by a preponderance of the evidence the elements of nondischargeability under 11 U.S.C. § 523(a)(2)(A). The RTC argued in response that the court was not bound by the jury's verdict in part because "the evidence showed as a matter of law that Carpenter engaged in the conspiracy." The RTC also argued that it did not need to prove all of the traditional elements of nondischargeability under § 523(a)(2)(A).

In its Order on Dischargeability, the district court held that Carpenter's debt was nondischargeable under § 523(a)(2)(A). Although the court recognized that the jury did not find that Carpenter conspired to defraud Universal Savings, it explained:

> [T]he Court must disregard the jury's finding on this point because the evidence establishes and logic dictates that Houston Storage, Inc. could not be a conspirator except through the conduct of Carpenter.... Moreover, the question of whether Carpenter participated in a conspiracy is not controlling.
>
> Section 523(a)(2)(A) of the Bankruptcy Code (Title 11), requires the Court to determine the individual conduct of Carpenter. The inquiry is whether Carpenter incurred a debt by false pretenses, representation or fraud. This Court finds that he did and the record is sufficiently ample on this point.

Based on this ruling, the court entered a final judgment of nondischargeability.

Carpenter appeals the court's final judgment of nondischargeability on two alternative grounds. First, he contends that the jury's verdict in his favor precluded the court from determining whether his debt on the note was nondischargeable under § 523(a)(2)(A). In the alternative, Carpenter argues that even if the nondischargeability issue was not precluded, the record contains insufficient evidence to support the court's ruling.

After Carpenter perfected his appeal to this court, RecoverEdge Limited Partnership ("RecoverEdge") acquired the RTC's claim against Carpenter, and we granted the RTC's motion to

RTC's conspiracy to defraud claim. Westmoreland's liability is based on his default judgment.

substitute RecoverEdge as appellee.

## II

Before reaching the merits of Carpenter's appeal, we must address RecoverEdge's request that we dismiss the appeal based on Carpenter's failure to comply with Rule 10 of the Federal Rules of Appellate Procedure. Rule 10(b)(2) requires that an appellant who "intends to urge on appeal that a finding or conclusion is unsupported by the evidence ... include in the record a transcript of all evidence relevant to such finding or conclusion." Rule 10(b)(3) then requires that if an appellant elects not to include the entire transcript, he shall file a statement of the issues he intends to present on appeal and serve a copy on the appellee. "The failure of an appellant to provide a transcript is a proper ground for dismissal of the appeal." *Richardson v. Henry,* 902 F.2d 414, 416 (5th Cir.) (dismissing appeal based on sufficiency of the evidence because appellant failed to include a transcript), *cert. denied,* 498 U.S. 901, 111 S.Ct. 260, 112 L.Ed.2d 218 (1990). However, such a dismissal is within our discretion. *Bozé v. Branstetter,* 912 F.2d 801, 803 (5th Cir.1990).

In this case, Carpenter included only those portions of the trial transcript relating to the Houston Storage transaction,[9] but he failed to file and serve the statement of issues required by Rule 10(b)(3). The only testimony missing from the record is testimony concerning the five other transactions at issue in the conspiracy case, transactions which were irrelevant to Carpenter's case in the district court and irrelevant to any possible issues in his appeal. We note that the district court specifically instructed the jury that "only the evidence admitted in the Houston Storage transaction should be considered by you in determining whether Carpenter participated in any conspiracy."[10]

RecoverEdge argues that the record is "necessarily incomplete" but does not point to any specific trial testimony missing from the record that could be relevant to Carpenter's appeal. In

---

[9]Carpenter requested the following: "Transcript of all questioning of RTC witnesses by Michael Carr [counsel for Pentecost]; Transcript of all testimony of witnesses either on direct or cross by Michael Carr; and Any testimony involving the Houston Storage Inc. transactions."

[10]Furthermore, we note that the record on appeal is in fact over-inclusive; it includes many pages of trial transcript concerning the five other transactions at issue in this case, evidence that the court ruled inadmissible as to Carpenter. In addition, the record includes all of the pleadings, only a small fraction of which relate to Carpenter or the Houston Storage transaction.

addition, our decision in this case does not require that we reach Carpenter's sufficiency of the evidence argument. *See infra* part III.G. Consequently, we hold that Carpenter's failure to file and serve a statement of issues under Rule 10(b)(3) was harmless, and we decline to exercise our discretion to dismiss the appeal. *See Bozé,* 912 F.2d at 803 (declining to dismiss appeal although appellant failed to include transcript of district court proceedings).

## III

## A

Carpenter argues that the district court erroneously failed to give the jury's verdict in the conspiracy action preclusive effect when it determined that Carpenter's debt is nondischargeable under § 523(a)(2)(A). We review the district court's conclusions of law de novo and its findings of fact for clear error. *Allison v. Roberts (In re Allison),* 960 F.2d 481, 483 (5th Cir.1992).

According to the doctrine of collateral estoppel, or issue preclusion, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *see* Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."), *cited in Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991). Although the court's judgment in the conspiracy case was based on state law, federal law determines the judgment's preclusive effect. *See Agrilectric Power Partners, Ltd. v. General Elec. Co.,* 20 F.3d 663, 664 (5th Cir.1994) (holding, in a res judicata case, that "[f]ederal law determines the preclusive effect of a prior federal judgment").[11]

---

[11] *See also Terrell v. DeConna,* 877 F.2d 1267, 1270 (5th Cir.1989) ("[W]hen a federal court renders a decision in a diversity case, the decision's preclusive effect is measured by federal principles of preclusion."); *Avondale Shipyards, Inc. v. Insured Lloyd's,* 786 F.2d 1265, 1269 n. 4 (5th Cir.1986) ("We apply federal law to the question of the res judicata or collateral estoppel effect of prior federal court proceedings, regardless of the basis of federal jurisdiction in either the prior or the present action."); *Johnson v. United States,* 576 F.2d 606, 612 (5th Cir.1978) (holding that federal rules of res judicata and collateral estoppel determine preclusive effect of prior federal FTCA judgments, even though liability is based on state law), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 60 L.Ed.2d 389 (1981).

Collateral estoppel depends on three elements: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action. *Sheerin v. Davis (In re Davis),* 3 F.3d 113, 114 (5th Cir.1993); *see also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 & n. 5, 99 S.Ct. 645, 649 & n. 5, 58 L.Ed.2d 552 (1979).[12] There is no question that the issue of whether Carpenter conspired with others to defraud Universal Savings was actually litigated in the first proceeding and necessary to the court's final judgment entered on the jury's verdict.[13] Therefore, the crucial issue in this case is whether the issues are identical. *See Brister v. A.W.I., Inc.,* 946 F.2d 350, 354 (5th Cir.1991) ("An important aspect of determining whether a previously litigated matter has collateral estoppel effect is the identity of the matter with the issue currently before the court.").

---

[12]In some cases we have recognized a fourth requirement that there be "no special circumstance that would render preclusion inappropriate or unfair." *United States v. Shanbaum,* 10 F.3d 305, 311 (5th Cir.1994); *see, e.g., id.; Universal Am. Barge Corp. v. J-Chem, Inc.,* 946 F.2d 1131, 1136 (5th Cir.1991); *see also* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4426, at 264-65 (1981) ("A final limitation on issue preclusion may be found in occasional statements that it "should not be exercised in such a manner as to work an injustice.' Such general statements should be approached with great caution." (footnote omitted) (quoting *Title v. I.N.S.,* 322 F.2d 21, 24 (9th Cir.1963))). Because RecoverEdge has not alleged such a special circumstance in this case, and because we have not independently identified one, we do not address whether such a fourth requirement of fairness would apply.

We do note, however, that although some recent decisions list the fairness requirement as a general requirement for the application of issue preclusion, the requirement originated as a limitation on *offensive* collateral estoppel. *See Shanbaum,* 10 F.3d at 311 (citing *Universal Am. Barge,* 946 F.2d at 1136 (citing *Parklane Hosiery,* 439 U.S. at 326-32, 99 S.Ct. at 649 (1979) (delineating requirements for offensive collateral estoppel))). Offensive collateral estoppel arises when a plaintiff seeks to estop a defendant from relitigating issues that the defendant previously litigated and lost against another plaintiff. *Parklane Hosiery,* 439 U.S. at 329, 99 S.Ct. at 650. This case involves traditional, or mutual estoppel because the relevant parties in the conspiracy case were the same as the parties in the dischargeability proceeding. *See id.* at 326-27, 99 S.Ct. at 649 (explaining mutuality requirement for traditional collateral estoppel).

[13]The court's "Judgment Pursuant to Fed.R.Civ.P. Rule 54(b)" does not expressly state that Carpenter is not liable for conspiracy to defraud the RTC. However, the court entered the judgment "on all claims other than those at issue in the bankruptcy of [the Carpenters] [i.e. the nondischargeability proceeding]." Consequently, because the judgment provided for no damages against Carpenter for fraud, the Rule 54(b) judgment effectively amounts to a take nothing judgment on the RTC's conspiracy claim against Carpenter, and the jury's verdict finding Carpenter not liable for civil conspiracy to defraud the RTC was necessary to that judgment.

Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue, *Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.,* 801 F.2d 748, 751 (5th Cir.1986), and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met. *United States v. Shanbaum,* 10 F.3d 305, 311 (5th Cir.1994). As one treatise points out, however, "[c]ourts have readily perceived that for purposes of preclusion, "[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same.' " 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4417, at 165 (footnote omitted) (quoting *Peterson v. Clark Leasing Corp.,* 451 F.2d 1291, 1292 (9th Cir.1971)). *See also Brister,* 946 F.2d at 354 n. 1 (5th Cir.1991) (explaining that "[n]ot only the facts, but also the legal standard used to assess them, must be identical").[14]

B

To define the issue that was actually litigated in the first proceeding, we look to the jury's special verdict. *See* 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4420, at 184 (explaining that special verdicts can clarify what juries actually decided). The verdict form submitted to the jury demonstrates that the issue in the first case was whether Carpenter "engaged in a civil conspiracy with [named and unnamed defendants] to defraud [the RTC as receiver for Universal Savings] in connection with [the Houston Storage transaction]." The jury received the following instruction on the definition of civil conspiracy:

You are instructed that the elements of a conspiracy are:

(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result.

You are further instructed that to find a defendant liable for "conspiracy to defraud', it must be shown that the particular defendant charged agreed with one or more of the other

---

[14]For example, we held in *Brister* that a jury's finding of no negligence in a Jones Act case did not preclude the district court from determining whether the employer had privity or knowledge of the dangerous condition in a subsequent limitation proceeding. 946 F.2d at 354-55. We reasoned that while "numerous potential avenues of inquiry ... can determine privity or knowledge in a limitation proceeding, the Jones Act negligence inquiry focuses only on whether the employer knew or should have known of the defect at the time of the accident." *Id.* at 357.

conspirators on the claimed illegal object of the conspiracy and intended to have it brought about.[15]

The jury found that all of the named defendants except for Dr. Carpenter "engaged in a civil conspiracy" to defraud the RTC as receiver for Universal Savings in connection with the Houston Storage transaction. When asked whether it found by a preponderance of the evidence that Carpenter engaged in the conspiracy, the jury answered, "No."

## C

The issue in the second proceeding was whether the RTC's breach of contract judgment was nondischargeable under § 523(a)(2)(A). Section 523(a)(2)(A) excepts from the discharge provisions of the Bankruptcy Code "any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The creditor must prove by a preponderance of the evidence that the debt is nondischargeable. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). As a general matter, § 523(a)(2)(A) "contemplates frauds involving "moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient.' " *Allison v. Roberts (In re Allison),* 960 F.2d 481, 483 (5th Cir.1992) (footnote omitted) (quoting 3 *Collier on*

---

[15]The jury instructions further explained that:

> [P]articipation in a civil conspiracy may be established by proof showing concert of action or other facts or circumstances from which the reasonable and natural inference arises that the acts were committed in furtherance of the common design, intention or purpose of the conspiracy. Further, it is not required that each and every act of a conspirator be shown to have been in concert with others or that it be established by direct proof that all the conspirators conspired at a given time prior to each transaction. Therefore, it is not necessary to prove that each of the conspirators were present at each act or transaction that forms the basis of the civil conspiracy. In determining whether a defendant participated in the conspiracy, you should consider the actions and declarations of all of the alleged conspirators, including persons who are no longer named defendants in the case.

On the definition of "fraud," the court instructed the jury that "[f]or an act to constitute fraud, it must be proved that the Defendant made a misrepresentation or omission knowingly and intentionally, not as a result of mistake or accident; that is, that the Defendant either knew of the falsity of the misrepresentation or the false effect of the omission, or that he made the misrepresentation or omission recklessly without any knowledge of its truth as a positive assertion."

*Bankruptcy* ¶ 523.08[4], at 523-50 (Lawrence P. King et al. eds., 15th ed. 1989));  *see also First Nat'l Bank v. Martin (In re Martin),* 963 F.2d 809, 813 (5th Cir.1992) ("Debts falling within section 523(a)(2)(A) are debts obtained by frauds involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made.").

When defining the elements of nondischargeability under § 523(a)(2)(A), we have distinguished between actual fraud on the one hand, and false pretenses and representations on the other.  *See Bank of La. v. Bercier (In re Bercier),* 934 F.2d 689, 692 (5th Cir.1991);  *see also* 3 *Collier on Bankruptcy* ¶ 523.08[4] & [5] (discussing in separate sections "false pretenses or false representations" and "actual fraud").[16]  In order for a debtor's representation to be a "false representation or false pretense" under § 523(a)(2), it "must have been:  (1) [a] knowing and fraudulent falsehood[ ], (2) describing past or current facts, (3) that [was] relied upon by the other party."  *In re Allison,* 960 F.2d at 483;  *see also In re Bercier,* 934 F.2d at 692 ("[T]o be a false representation or false pretense under § 523(a)(2), the "false representations and false pretenses [must] encompass statements that falsely purport to depict *current or past facts.'* " (quoting *Keeling v. Roeder (In re Roeder),* 61 B.R. 179, 181 (Bankr.W.D.Ky.1986))).

"Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or

---

[16]Congress added "actual fraud" to the fraud exception to discharge when it enacted the Bankruptcy Act of 1978, Pub.L. No. 95-598, § 523(a)(2)(A), 92 Stat. 2549, 2590 (1978). Section 17a(2) of the former Bankruptcy Act of 1898 provided in relevant part:  "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... are liabilities for obtaining money or property by false pretenses or false representations...."  11 U.S.C. § 35(a)(2) (repealed 1978).  The commentary in *Collier on Bankruptcy* suggests that the addition of "actual fraud" simply clarifies the limited scope of the fraud exception:

> The addition of the words "or actual fraud" probably makes no change in the law as it existed prior to enactment of the [Bankruptcy Act of 1978] because false pretenses and representations were construed to mean acts involving moral turpitude or intentional wrong....

> In any event, section 523(a)(2)(A) was intended to codify case law as expressed in *Neal v. Clark* [, 95 U.S. 704, 24 L.Ed. 586 (1877),] which interpreted "fraud" to mean actual or positive fraud rather than fraud implied by law.

3 *Collier on Bankruptcy* ¶ 523.08[5], at 523-58 (footnotes omitted).

omitted with the design of perpetrating what is known to be a cheat or deception." 3 *Collier on Bankruptcy* ¶ 523.08[5], at 523-57 to 523-58 (footnote omitted). In order to prove nondischargeability under an "actual fraud" theory, the objecting creditor must prove that: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied [17] on such represent ations; and (5) that the creditor sustained losses as a proximate result of the representations." *In re Roeder,* 61 B.R. at 181, *quoted in In re Bercier,* 934 F.2d at 692.[18]

D

Viewed in the abstract, the elements of nondischargeability under § 523(a)(2)(A) are sufficiently distinct from the elements of civil conspiracy to defraud to suggest that a jury verdict in a conspiracy to defraud case would not ordinarily preclude a determination of nondischargeability under § 523(a)(2)(A). We therefore agree with RecoverEdge that the traditional elements of nondischargeability under § 523(a)(2)(A) are not identical to the elements of a civil conspiracy to defraud. However, we do not compare the issues in the abstract, and in this case, the specific nature of the RTC's nondischargeability claim against Carpenter has made what would otherwise be distinct issues identical.

In its Brief Regarding Dischargeability, the RTC did not argue the traditional elements of

---

[17]Some courts require the creditor to have *reasonably* relied on the representations, but the Fifth Circuit does not. *See In re Allison,* 960 F.2d at 484-85 & n. 3 (citing cases).

[18]Other circuits have applied a uniform standard resembling our "actual fraud" standard to all debts falling under § 523(a)(2)(A). *See, e.g., Britton v. Price (In re Britton),* 950 F.2d 602, 604 (9th Cir.1991) ("The Ninth Circuit has employed a five-part test for determining when a debt in nondischargeable under section 523(a)(2)(A)."); *Caspers v. Van Horne (In re Van Horne),* 823 F.2d 1285, 1287 (8th Cir.1987) ("To succeed in a section 523(a)(2)(A) claim, the creditor must prove the following [five] elements: ...."), *abrogated on other grounds by Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *see also In re Maurice,* 21 F.3d 767, 774 (7th Cir.1994) ("Under 11 U.S.C. § 523(a)(2)(A), [the creditor] was required to prove (a) the debtor obtained [money] through representations either knowingly false or made with such reckless disregard for the truth as to constitute willful misrepresentation; (2) the debtor possessed an actual intent to defraud; and (3) [the creditor] actually and reasonably relied on the false representation.").

nondischargeability set out in our opinion in *Bercier.*[19] Instead, the RTC proceeded on an alternative theory best summarized by RecoverEdge in its brief on appeal: "The RTC's theory as to the particular transaction at issue here was that [Carpenter] knowingly participated with Mr. Pentecost and others, including certain officers of the savings and loan, in a sham transaction."[20] The record supports this theory, RecoverEdge argues, because the "RTC alleged and proved that [Carpenter] and others engaged in a conspiracy to ... defraud the RTC and the bank examiners by setting up a sham transaction. The evidence was sufficient to show that [Carpenter] had knowledge of the purpose of the conspiracy and actively participated in it."

In other words, the RTC argued that Carpenter's debt is nondischargeable under § 523(a)(2)(A) because he participated in a conspiracy to defraud the RTC. That issue, however, is precisely the issue decided by the jury in the RTC's conspiracy case against Carpenter. The question put to the jury in the conspiracy case was: "Do you find from a preponderance of the evidence that [Carpenter, Pentecost, and Houston Storage] engaged in a civil conspiracy with [named and unnamed defendants] to defraud [the RTC as Receiver for Universal Savings] in connection with [the Houston Storage transaction]?" The RTC then sought to put what amounts to the same question before the district court in the dischargeability proceeding: Do you find, by a preponderance of the evidence, that Dr. Carpenter participated in a scheme to defraud the RTC as receiver for Universal Savings? However, as the Supreme Court explained in *Ashe v. Swenson,* "when an issue of ultimate fact has

---

[19]In fact, the RTC did not even allege the basic elements of nondischargeability under § 523(a)(2)(A) in its "Complaint to Determine Dischargeability of Debt." Instead, the RTC realleged and incorporated by reference the allegations of its Fourth Amended Complaint in the conspiracy action, explaining that "the details of the fraudulent scheme by which the Debtor obtained money or credit from the Plaintiff are set forth in the Plaintiff's Fourth Amended Complaint."

> We note that the RTC would not have been barred under the doctrine of res judicata, or claim preclusion, from asserting additional grounds supporting nondischargeability based on fraud. *See Brown v. Felsen,* 442 U.S. 127, 138-39, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979).

[20]To support this theory of nondischargeability, the RTC cited the only apparent authority for it: *MacDonald v. Buck (In re Buck),* 75 B.R. 417, 420-21 (Bankr.N.D.Cal.1987). As we hold that the RTC's reliance on this theory was foreclosed by the jury's earlier factual determination that Carpenter did not conspire to defraud the RTC, we express no opinion as to its merits or applicability to the facts of this case.

once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970).

Because the issues of ultimate fact in the two proceedings are identical, we hold that the RTC was precluded from asserting its "participation in a fraudulent scheme" theory of nondischargeability under § 523(a)(2)(A), and the district court was bound by the jury's verdict in Carpenter's favor on the factual issue underlying the RTC's theory.

We do not hold that a finding of nonliability for civil conspiracy to defraud necessarily precludes litigation of nondischargeability under § 523(a)(2)(A). Rather, we hold that where, as here, the factual issue that forms the basis for the creditor's theory of nondischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds. *See Sheerin v. Davis (In re Davis),* 3 F.3d 113, 115-16 (5th Cir.1993) (holding that jury verdict in prior state court fraud action, including finding that debtor willfully breached fiduciary duty, had preclusive effect on court's determination of nondischargeability based on defalcation while acting in a fiduciary capacity under § 523(a)(4)); *Lacy v. Dorsey (In re Lacy),* 947 F.2d 1276, 1277-78 (5th Cir.1991) (holding that judgment in prior state court proceeding against debtor, in which court found that debtor made false representations, had preclusive effect on court's determination of nondischargeability under § 523(a)(2)(A) based on false representations).

E

In addition to arguing that the issues are not identical, RecoverEdge argues that collateral estoppel does not apply to the district court's nondischargeability determination in this case because (1) the first proceeding was legal in nature, while the bankruptcy proceeding was equitable, and (2) the first proceeding involved a question of state law, while the second involved a question of federal bankruptcy law. The RTC cites no authority for these limitations on the application of collateral estoppel, and both are unfounded. By the RTC's reasoning, state court fraud judgments for damages would never have collateral estoppel effect in bankruptcy court dischargeability proceedings. However, the Supreme Court explicitly held in *Grogan v. Garner* that "collateral estoppel principles

do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991).  The fraud judgment in *Grogan* was both legal in nature and based on state law.  *See Henson v. Garner (In re Garner),* 881 F.2d 579, 580-81 (8th Cir.1989), *rev'd sub nom. Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).  Indeed, it is well settled that state judgments for damages and/or equitable relief based on fraud and related causes of action can have collateral estoppel effect in subsequent bankruptcy proceedings to determine dischargeability under § 523(a).[21]

At oral argument, RecoverEdge also argued that collateral estoppel does not apply to this case because there was no final judgment in the conspiracy case.  This argument is legally and factually inaccurate.  RecoverEdge's predecessor, the RTC, successfully moved the court to accept the jury's verdict and later to enter final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  Furthermore, a final judgment is not a prerequisite for issue preclusion when a jury has rendered a conclusive verdict.  *See* Restatement (Second) of Judgments § 13 (1982) ("The rules of res judicata are applicable only when a final judgment is rendered.  However, for purposes of issue

---

[21]*See, e.g., In re Davis,* 3 F.3d at 116 (holding that resolution of issue underlying state-court fraud judgment precluded relitigation of same issue in nondischargeability proceeding); *Nelson v. Tsamasfyros (In re Tsamasfyros),* 940 F.2d 605, 607 (10th Cir.1991) (holding that state-court breach of fiduciary duty judgment precluded re-litigation of same issue in dischargeability proceeding); *Halpern v. First Ga. Bank (In re Halpern),* 810 F.2d 1061, 1064 (11th Cir.1987) (holding that state-court consent judgment containing findings of fraud precluded relitigation of same issue in dischargeability proceeding); *see also In re Lacy,* 947 F.2d at 1277 (holding that state-court order of rescission based on finding of misrepresentation held to preclude relitigation of fraud issue in dischargeability proceeding).

These decisions in the bankruptcy context are consistent with general collateral estoppel principles, according to which an issue litigated in a legal action can be precluded in a subsequent equitable action, and *vice versa.  See Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 556 n. 4, 110 S.Ct. 1331, 1338 n. 4, 108 L.Ed.2d 504 (1990) (noting that if certain claims had not been dismissed, jury's determination would have had preclusive effect when court considered equitable claims); *Parklane Hosiery,* 439 U.S. at 334-37, 99 S.Ct. at 653-55 (holding that equitable determination can have collateral estoppel effect in subsequent legal action); *Davenport v. DeRobertis,* 844 F.2d 1310, 1313-14 (7th Cir.) (holding that jury's finding was binding on court considering claim for equitable relief), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988).  Similarly, judgments based on state law can have full preclusive effect in subsequent proceedings involving federal law.  *See* 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4417, at 167-69 (explaining that state-court judgments can have collateral estoppel effect in federal court provided the issues are identical).

preclusion, ... "final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."); *see also id.* § 13 cmt. g, illus. 3 (illustrating that jury verdict rendered before entry of final judgment is conclusive for purposes of issue preclusion); *see also Davenport v. DeRobertis,* 844 F.2d 1310, 1313-14 (7th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988) (noting that the "jury's verdict would bind the judge under the doctrine of collateral estoppel (thus demonstrating that the doctrine does not require a final judgment in the conventional sense).").

The RTC argued below that the court could disregard the judgment in the earlier proceeding because the jury's verdict was erroneous as a matter of law.[22] The district court held that it "must disregard the jury's finding on this point because the evidence establishes and logic dictates that Houston Storage, Inc. could not be a conspirator except through the conduct of Carpenter." It is well settled, however, that even arguably erroneous judgments have preclusive effect if the requirements for collateral estoppel are satisfied. *See, e.g., I.R.S. v. Teal (In re Teal),* 16 F.3d 619, 622 n. 6 (5th Cir.1994) (federal court "must give res judicata effect to a prior judgment even if it would be voidable on appeal because of legal error"); *Disabled Am. Veterans v. Commissioner,* 942 F.2d 309, 316 (6th Cir.1991) ("It requires more than mere belief that a case was wrongly decided to avoid the application of the collateral estoppel doctrine."); *Cutler v. Hayes,* 818 F.2d 879, 888 (D.C.Cir.1987) ("A valid jurisdictional judgment has preclusive effect, we note, even if erroneous."); *Goss v. Goss,* 722 F.2d 599, 605 (10th Cir.1983) ("[T]he res judicata or collateral estoppel "consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong.' " (quoting *Federated Dep't Stores v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981))). Consequently, the district court's view of the accuracy of the jury's verdict was irrelevant to the question of the verdict's preclusive effect.

F

RecoverEdge argues in the alternative that even if its "participation in a fraudulent scheme"

---

[22]It is undisputed that the RTC did not move for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. In fact, the RTC moved for entry of judgment on the jury's verdict and did not appeal the final judgment.

theory fails, as we hold it does under the collateral estoppel doctrine, the fraud of Pentecost and Westmoreland may be imputed to Carpenter: "[T]he false statements of Pentecost and Westmoreland, made on behalf of the corporation, are attributable to Carpenter, the President, Director and a shareholder of the corporation." We do not decide whether this theory is supported by the record or whether it, too, would be precluded by the jury's verdict in Carpenter's favor because RecoverEdge cites no direct authority for such a rule, and we see no need to adopt it in this case.[23]

The two cases RecoverEdge cites in purported support of its argument are inapposite to this case. In *Laborers Clean-up Contract Admin. Trust Fund v. Kay (In re Kay),* 60 B.R. 174 (Bankr.C.D.Cal.1986), the bankruptcy court held a debt nondischargeable under § 523(a)(2)(A). The debtor, along with two codefendants, had been held jointly and severally liable for "submission of knowingly false statements" on behalf of a corporation, and the bankruptcy court found that the debtor himself knowingly made false representations. *Id.* at 175-76. Although the court also held that the false statements of the debtor's two codefendants were attributable to him for purposes of the nondischargeability proceeding, it noted that this holding hinged on a finding that the debtor and his codefendants were alter egos of the corporation. *Id.* at 177; *see also Industrie Aeronautiche e Meccaniche Rinaldo Piaggio S.p.A. v. Kasler (In re Kasler),* 611 F.2d 308, 309-310 n. 3 (9th Cir.1979) (explaining that debtor who was alter ego of corporation could be "non-dischargeably liable" for willful and malicious conduct of corporation's employees and of his "co-alter-ego"), *cited in In re Kay,* 60 B.R. at 177. In this case, there has been no finding or allegation that Carpenter was the alter ego of Houston Storage.

The court in *Kay* also held that the codefendants' joint and several liability for the fraud warranted charging the debtor with the statements of his codefendants, explaining that " "executive officers [are not] responsible for the neglect of duty, negligence, or misconduct of each other in their official relations, without proof of joint participation.' " *In re Kay,* 60 B.R. at 177 (quoting 18B Am.Jur.2d *Corporations* §§ 1719, 1720 (1985)). In this case, Carpenter was not found jointly and

---

[23]We note that counsel for RecoverEdge retreated from this theory somewhat at oral argument, stating that she did not want to rely solely on the imputation argument.

severally liable for fraud, and any argument that he participated in a scheme to defraud would be precluded by the jury's verdict in Carpenter's favor. *See supra* part III.D.

RecoverEdge also cites as indirect authority for its argument our decision in *Luce v. First Equip. Leasing Corp. (In re Luce),* 960 F.2d 1277 (5th Cir.1992). In that case, we held that a *partner's* fraud could be imputed to an innocent partner to make the innocent partner's debt nondischargeable under § 523(a)(2)(A). *Id.* at 1282. *Luce* is consistent with the general rule that "[a] debtor who has made no false representation may, nevertheless, be bound by the fraud of an agent acting within the scope of the debtor's authority." 3 *Collier on Bankruptcy,* ¶ 523.08[4] at 523-57. That rule, like our decision in *Luce,* has no bearing on this case because RecoverEdge does not contend that Pentecost and Westmoreland acted as Carpenter's agents.

RecoverEdge's imputation argument is supported neither by the cases it cites nor by existing case law on nondischargeability. It is also inconsistent with the general principle that § 523(a)(2)(A) "contemplates frauds involving "moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient.'" *In re Allison,* 960 F.2d 481, 483 (5th Cir.1992) (declining to apply agency fraud theory to hold wife's debt nondischargeable where there was no evidence that wife was aware of fraud) (footnote omitted) (quoting 3 *Collier on Bankruptcy* ¶ 523.08[4], at 523-50).

## G

In sum, we hold that because the issue of whether Carpenter participated in a fraudulent scheme was previously litigated in the conspiracy case against Carpenter, the RTC was barred from relitigating the issue in support of its nondischargeability claim. In addition, we reject as a matter of law RecoverEdge's argument that the fraud of Westmoreland and Pentecost can be imputed to Carpenter for purposes of § 523(a)(2)(A). Consequently, because these were the RTC's only arguments in support of nondischargeability, we hold that Carpenter's breach of contract judgment is dischargeable.[24]

---

[24]We therefore do not reach Carpenter's argument that the district court's findings underlying its nondischargeability determination were clearly erroneous.

IV

For the foregoing reasons, we REVERSE and REMAND to the district court to discharge Carpenter's breach of contract judgment.