Albert HATCH, Plaintiff,

v.

DUROCHER DOCK AND DREDGE, INC., Defendant.

No. 91-CV-10387-BC.

United States District Court, E.D. Michigan, N.D.

Feb. 10, 1993.

Donald Krispin, Detroit, MI, for plaintiff.

Robert N. Dunn, Chicago, IL, for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CLELAND, District Judge.

Plaintiff, Albert Hatch, has brought the above entitled action against his former employer, Durocher Dock and Dredge, alleging negligence under the Jones Act and unseaworthiness under general maritime law. Plaintiff injured his back while working on a dock renovation/installation project on the Saginaw River in Bay City, Michigan. De-

fendant has moved for summary judgment on the grounds that the barge to which Mr. Hatch was assigned when he injured himself was not a "vessel" within the meaning of the Jones Act or under principles of maritime law; therefore Mr. Hatch, at the time of his injury, was not a "seaman" entitled to bring suit under the Jones Act or under general maritime law. The Court finds Defendant's position to be well taken and shall therefore grant Defendant's motion.

## BACKGROUND

The relevant facts are not in dispute. Mr. Hatch was a nonunion employee of Defendant Durocher Dock and Dredge. During the summer of 1991, Durocher was involved in a project rebuilding the Total Petroleum gasoline dock on the Saginaw River in Bay City. The dock paralleled the shore of the west bank of the river. Much of the construction work was performed from aboard two barges, the SAMUEL II and BARGE 504; from the deck of the barges Durocher employees, including Plaintiff, would first drive pilings into the river bottom and would then construct temporary work frames (templates) around the pilings. Next, while standing on the barges and/or the templates, the employees would install structural cross beams between the pilings. Finally, they would affix the dock surface to the beams. After a section of the dock had been completed, the employees would remove the templates and move the barge into position to work on the next section of the dock.

Durocher's employment records show that Mr. Hatch was assigned to the SAMUEL II and that he was classified as a deckhand. Durocher's "Daily Activity Sheet" from the date of the accident shows that on that day, Hatch was classified as a "deckhand-piledriver." Before the project commenced, Mr. Hatch helped to transport the barge, via Lake Huron, from Cheboygan to Bay City. His primary duties with respect to the Total Petroleum project entailed operating a hammer/vibrator which drove the pilings and welding. He worked from both the surface of the barge and from the templates. He also tended lines, etc., when the barge was moved into new work positions along the shore of the river. At the end of most workdays the barge was moved from its work position to another dock where the barge was protected from rough water, etc.

Plaintiff injured his back on July 2, 1991 as he stepped down from one of the templates (approximately sixteen inches) to the surface of the SAMUEL II. He was carrying four angle irons and misjudged the step; he immediately felt a sharp pain in his back.

## DISCUSSION AND ANALYSIS

■ To qualify as a seaman under the Jones Act or general maritime Law, the Plaintiff must show that he was permanently assigned to or performed a substantial part of his work aboard a *vessel. Ducrepont v. Baton Rogue Marine Enterprises, Inc.*, 877 F.2d 393 (5th Cir.1989). Defendant argues that the barge SAMUEL II, at the time Plaintiff was injured, was not a vessel within the meaning of the Jones Act or general maritime Law. Plaintiff argues that the question of whether the barge was a vessel should be left to the trier of fact.

"The existence of a vessel is a 'fundamental prerequisite to Jones Act jurisdiction' and is at the core of the test for seaman status. Unfortunately, the term 'vessel' has escaped precise definition, which helps to explain why special-use structures … may qualify at times as Jones Act vessels, despite traditional notions in maritime jurisprudence to the contrary." *Gremillion v. Gulf Coast Catering Company*, 904 F.2d 290 (5th Cir.1990), *quoted in Michel v. Total Transp., Inc.*, 957 F.2d 186 (5th Cir.1992).

■ In the Sixth Circuit, the caselaw as to what constitutes a vessel for Jones Act purposes is sparse. It is clear, however, that a plaintiff alleging seaman status must at a minimum show that the purported vessel was "in navigation" at the time of the injury. *See Boyd v. Ford Motor Co.*, 948 F.2d 283, 288 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992) (individual injured while working on a ship in "winter lay up" was not entitled to seaman status under the Jones Act).

The Fifth Circuit has decided several cases involving the issue of whether a given struc-

ture from which workers perform dock construction/repair, bridge construction, etc. is a "vessel" for Jones Act and general maritime Law purposes, or merely a "work platform." In deciding whether a structure is a work platform the Fifth Circuit considers whether:

1) The structures involved were constructed and used primarily as work platforms;

2) They were moored or otherwise secured at the time of the accident; and

3) Although they were capable of moving and were sometimes moved across navigable waters in the course of normal operations, any transportation function they performed was merely incidental to their primary purpose of serving as work platforms.

*Sharp v. Wausau Ins. Cos.*, 917 F.2d 885, 888 (5th Cir.1990). Plaintiff urges the Court to adopt this test and to let the jury determine, using these guidelines, whether or not the SAMUEL II was a vessel.

■ Defendant urges the Court to adopt an alternate test recently enunciated by the First Circuit in *DiGiovanni v. Traylor Bros., Inc.*, 959 F.2d 1119 (1st Cir.) (*en banc*), *cert. denied*, —— U.S. ——, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992): "if a barge, or other float's 'purpose or primary business is not navigation or commerce,' then workers assigned thereto for its shore enterprise are to be considered seamen only when it is in actual navigation or transit." *Id.* at 1123. This test focuses on the use of the structure rather than its physical characteristics. (Even though the barge in question in *DiGiovanni* had a raked bow and stern, nautical equipment, and had been inspected by the Coast Guard, the court nonetheless held that the barge was not a vessel for Jones Act purposes.) The First Circuit made clear that with respect to the "purpose or primary business" element of the test, the court must confine its inquiry to the time frame during which the injury occurred: "A worker becomes a seaman not by reason of the physical characteristics of the structure to which he is attached, but because its being operational 'in navigation' exposes him to a 'seaman's hazards.' *He is not exposed by what the vessel did in the past, or by its future potential, and to give him these special benefits by*

*mechanical definitions without the exposure is misplaced generosity....*" *Id.* at 1123 (emphasis added).

■ The Court finds the First Circuit's opinion in *DiGiovanni, supra.*, to be well reasoned and highly persuasive. The Court agrees that a "worker becomes a seaman not by reason of the physical characteristics of the structure to which he is attached, but because its being operational 'in navigation' exposes him to 'a seaman's hazards.' " *DiGiovanni, supra.* The Fifth Circuit test urged by Plaintiff fails to recognize this fact. The Court finds further that the First Circuit's view is fully consistent with the caselaw in this circuit (*Boyd v. Ford Motor Co., supra.*), which makes clear that for a structure to be a vessel, the structure must be "in navigation." The Court therefore adopts the *DiGiovanni* test for determining whether a structure is a "vessel."

■ Applying the First Circuit's test to the facts of the case at bar, the Court concludes that the barge SAMUEL II was not a vessel under the Jones Act or general maritime law. The undisputed facts disclose that at the time of plaintiff's injury, neither the barge's "purpose" nor its "primary business" were navigation or commerce. Rather, the barge was being used merely as a floating platform from which Plaintiff and others were performing their dock construction duties. As in *DiGiovanni*, when the SAMUEL II was moved, it was only "moved about [the work area] for working convenience, and at night for safety." *Id.* at 1124. Nor was the barge "in actual navigation or transit" at the time that Plaintiff sustained his injury. The Court therefore holds that the SAMUEL II was not a vessel as a matter of law.

## CONCLUSION AND ORDER

Because the barge SAMUEL II was not "in navigation" at the time of Plaintiff's injury, the barge was not a vessel under the Jones Act or general maritime Law; Plaintiff therefore was not a seaman and may not maintain a claim under the Jones Act or general maritime law.

Defendant's Motion for Summary Judgment is HEREBY GRANTED.

IT IS SO ORDERED.