In re: **WILLIAMS MARINE CONSTRUCTION AND SERVICES, INC., as owner of the Barge 0–1, and Workboat Colt, both undocumented, in a cause of action for exoneration from or limitation of liability, Petitioner.**

No. 303CV293J16HTS.

United States District Court, M.D. Florida, Jacksonville Division.

April 27, 2004.

Thomas Albert Boyd, Jr., Boyd & Sutter, P.A., Jacksonville, FL, for Timothy Hood, Claimant.

Michael A. Garfield, Moseley, Warren, Prichard & Parrish, Jacksonville, FL, for Williams Marine Construction and Services, Inc., In Re.

Anna Marie Jemjemian–Conklin, Selis & Associates, P.A.; Ormond Beach, FL, for Omne Staff Leasing Services, Inc., Claimant.

Patrick Michael Leahy, Moseley, Warren, Prichard & Parrish, Jacksonville, FL, for Williams Marine Construction and Services, Inc., Petitioner.

James F. Moseley, Moseley, Warren, Prichard & Parrish, Jacksonville, FL, for Williams Marine Construction and Services, Inc., In Re.

Scott Alan Selis, Selis & Associates, P.A., Ormond Beach, FL, for Omne Staff Leasing Services, Inc., Claimant.

G.J. Rod Sullivan, Jr., Sullivan & Company, Jacksonville, FL, for Timothy Hood, Claimant.

### ORDER

MOORE, District Judge.

Before the Court are Claimant Hood's Amended Motion for Summary Judgment on Limitation of Liability (Dkt. 57); Claimant Hood's Motion for Summary Judgment on Claim of Omne Staff Leasing (Dkt. 79); and Petitioner Williams Marine Construction of Services, Inc.'s ("Williams Marine") Motion for Summary Judgment (Dkt. 99). Williams Marine filed a Memorandum of Law in Opposition to Claimant Hood's Amended Motion for Summary Judgment (Dkt. 59), and Claimant Omne Staff Leasing Services, Inc. ("Omne") filed a Response to Claimant Hood's Amended Motion for Summary Judgment (Dkt. 60). Omne also filed a Response to Hood's Motion for Summary Judgment on Omne's claim (Dkt. 81), and Hood has responded to Williams Marine's Motion for Summary Judgment (Dkt. 105). The Court will address each of the three motions for summary judgment separately below.

### I. Background and Procedural History

This case had its origin in Duval County Circuit Court when, on November 15, 2002, Claimant Timothy W. Hood ("Hood") filed an action against Williams Marine and Omne based on general maritime and admiralty law, as well as the Jones Act, 46 U.S.C.App. § 688. Hood claimed that while working on board Barge 0–1, he sustained injuries to his left foot on October 9, 2002. Hood was allegedly attempting to climb atop the housing of a boom crane on board the barge when his foot became entangled in the machinery, ultimately requiring the partial amputation of his foot.

This Court's involvement began on April 11, 2003, when Williams Marine, owner of Barge 0–1 and the Workboat Colt, filed its Verified Complaint for Exoneration from or Limitation of Liability Pursuant to Rule 9(h), Federal Rules of Civil Procedure and 46 U.S.C.App. § 183, *et seq.* (Dkt. 1). According to the Complaint, as of October 9, 2002, the Barge 0–1 and Workboat Colt, along with the Link–Belt Speeder Model 78 boom crane located on the barge, were "tight, staunch, properly equipped, supplied and crewed, and in all respects seaworthy and fit for their intended use"

while located in Florida territorial waters at a construction site in Naples, Florida. Dkt. 1, ¶ 2. The construction site was permitted for the purpose of driving of pilings from the barge and the crane located on board the barge, the building of a dock or jetty, dredging and creating a mitigation area. *Id.* at ¶ 3.

The barge and Workboat Colt were participating in the construction of a condominium/apartment complex, and on the day of Hood's accident, the barge was allegedly located near the seawall, was spudded down and was in the process of shutting down for the day for routine maintenance. *Id.* at ¶ 4. Williams Marine alleges that the accident occurred on board the barge without its privity or knowledge, and as such is should be exonerated or exempt from liability. In fact, none of Williams Marine's principles were on board the barge when Hood was injured, as only Tony Martin, a leased employee from Omne similar to Hood, was on board to operate the crane. *Id.* at ¶ 6. Hood's claims against Omne in state court are also based on duties it owed as leasing employer under the Jones Act and maritime law.

Williams Marine alleges that because the Plaintiff is claiming he is entitled to all seaman's remedies pursuant to the Jones Act and general maritime law, it is entitled to a limitation of liability as a shipowner under 46 U.S.C.App. § 183, *et seq.* It claims that the value of the Barge 0–1, with the crane, and the Workboat Colt, together with their apparel and fittings, was $91,000 immediately after the accident. *Id.* at ¶ 13. As such, should Williams Marine be adjudged liable for any of the damages claimed in the state court complaint, it claims that the loss occurred without its privity, fault or knowledge, limiting its liability to the value of the vessels and equipment at issue. *Id.* at ¶ 15. Williams Marine filed a bond in the amount of $102,420 with the Court, representing its limitation fund of $91,000, plus interest. *Id.* at ¶ 16; Dkt. 2. On April 16, 2003, the Court entered an Order (Dkt. 3) enjoining all claims and proceedings, including those in the Duval County Circuit Court, against Williams Marine, Barge 0–1, the crane and the Workboat Colt. The state court case by Hood against Omne is presumably ongoing.

Both Omne and Hood have filed claims against Williams Marine and its vessels pursuant to Supplemental Rule F, Federal Rules of Civil Procedure. Omne makes its claim under a Client Service Agreement between it and Williams Marine, wherein Omne was to employ the then-current employees of Williams Marine and then lease the employees back to Williams Marine, providing payroll services and workers' compensation for the employees. Dkt. 21, ¶ 3. Hood was listed under the employment agreement as one such "leased back" employee. However, Omne states that the true nature of Hood's job responsibilities on board the barge took him outside of state workers' compensation laws, and as such, Omne has cross claimed against Williams Marine for breach of the Client Service Agreement *Id.* at ¶ 11. Omne claims that Williams Marine must indemnify it for any liability found pursuant to Hood's claims, due to the alleged breach of agreement. Omne currently alleges damages in excess of $15,000 that Omne has paid for Hood's living expenses and medical bills. *Id.* at ¶¶ 13–14. In total, Omne is seeking the entire limitation fund submitted by Williams Marine as the total amount of its damages. *Id.* at ¶ 20.

In Hood's four-count Claim against Williams Marine, he alleges that he has been employed by Williams Marine as a deckhand and boat operator of the Colt, which was used to transport Barge 0–1, along with other vessels on the Regatta

Condominiums project, including Barge 0–4 and its associated crane and push boat. Dkt. 26, ¶ 2. According to Hood, he was working aboard the Barge 0–1 on October 9, 2002, building a seawall as part of the Regatta project, when he climbed the crane located on the barge at about 2:45 p.m., resulting in the ultimate injury to his foot. He claims that Williams Marine owed him a duty of reasonable care to provide a safe place to work, which it breached by failing to provide the necessary equipment for safe maintenance of the crane, failing to secure and guard the moving parts of the crane and to stop any machinery movement during maintenance, and by failing to instruct and supervise Hood during the maintenance operations. *Id.* at pp. 2–3. Hood further claims that Williams Marine violated federal regulations, including the Occupational Health and Safety Act ("OSHA"), by failing to provide a safe work environment. *Id.* at pp. 3–4. Hood therefore injects his Jones Act claim into the limitation of liability proceedings before this Court.

Hood also brings his claim for unseaworthiness of the Barge 0–1 and its crane before this Court. He alleges that the vessel and its crane were unseaworthy because there were inadequate means for access to the crane on the barge and because the guarding of the crane's moving parts was inadequate Hood therefore claims that Williams Marine is strictly liable for his injuries due to the unseaworthiness of the vessel. Hood also asserts his claims for maintenance and cure under general maritime law, as well as his claim under the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.,* in this action, alleging that if he was not a "seaman" under the Jones Act, then he was a "harbor worker" under the LHWCA.

Williams Marine's Motion for Summary Judgment (Dkt. 99) goes only toward the Jones Act claim, as Williams Marine's sole argument is that Hood is not a "seaman" as required for a claim under the Act, 46 App. U.S.C. § 688(a). Hood, on the other hand, argues in his Motion (Dkt. 57) that Williams Marine is not entitled to a limitation of liability as a matter of law because it was within its "privity and knowledge" to prevent the conditions rendering the barge and crane unseaworthy and in violation of OSHA and federal regulations. In addition, Hood claims that because Williams Marine did not secure compensation under the LHWCA, it cannot claim limitation of liability or comparative negligence as defenses to the Plaintiff's claims. Lastly, Hood claims entitlement to judgment as a matter of law against Omne on its claims, arguing that its personal contract claims with Williams Marine are not subject to a limitation of liability, nor are its indemnity claims for liability for Hood's injuries or maintenance and cure provided to Hood.

## II. Summary Judgment Standard

The Court should grant a motion for summary judgment only if "there is no genuine issue of material fact [such] that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). The Court will construe the record and all inferences that can be drawn from it in the light most favorable to the nonmoving party, and the moving party bears the burden of establishing the absence of a genuine material fact. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962); *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). Once this burden is

met, however, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. The Eleventh Circuit explained in *Samples* that the nonmoving party need only present evidence from which a jury might return a verdict in his favor in order to survive the motion for summary judgment. *See Samples,* 846 F.2d at 1330.

Notably, the Supreme Court pointed out in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), that the moving party's burden only extends to facts that might affect the outcome of the lawsuit under the governing law, as "[f]actual disputes that are irrelevant or unnecessary will not be counted." Summary judgment will only be granted if all facts and inferences point overwhelmingly in favor of the moving party, such that a responsible jury could not find in favor of the nonmoving party. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). As this case is currently scheduled for a bench trial, the Court would be the factfinder at trial should the parties' summary judgments be denied.

## III. Discussion

### A. *Hood's Motion for Summary Judgment (Williams Marine)*

Hood argues that he is entitled to judgment as a matter of law on Williams Marine's limitation of liability claim under 46 U.S.C.App. § 183 because the facts conclusively demonstrate that the crane/barge on which Hood was working was in violation of OSHA regulations and was unseaworthy. Hood argues that unsafe conditions existed due to the lack of a fixed ladder on the barge, as well as the absence of appropriate machinery guarding to protect against injury while the crane's parts were moving. According to Hood, these unsafe conditions were within the "privity and knowledge" of Williams Marine and its employee in charge of the crane/barge/workboat, making a limitation of liability inappropriate as a matter of law in this case. In addition, Hood argues that even if this Court does not consider him a "seaman" for purposes of his claims, Williams Marine cannot seek a limitation of liability on his claim under the LHWCA when it did not secure payments to Hood under the Act, nor can it rely on comparative negligence in defending the LHWCA claim. *See, e.g., Tug–Allie–B, Inc. v. United States,* 273 F.3d 936 (11th Cir.2001); *Brister v. A.W.I., Inc.,* 946 F.2d 350 (5th Cir.1991); *Weeks v. Alonzo Cothron, Inc.,* 493 F.2d 538 (5th Cir.1974).

Hood alleges that there were only two employees assigned to the crane/barge on the day of his injury, himself as the boat operator and deckhand, and the crane operator, Terry Martin. Dkt. 57, pg. 7. Hood argues that Williams Marine "entrusted the operation of the barge and crane" to Martin, and therefore any knowledge of the OSHA violations and unsafe conditions on the part of Martin (as the "master") can be attributed to Williams Marine as a matter of law in order to prevent any limitation of liability. *Id.* at pp. 8–10; 46 U.S.C.App. § 183(e). Hood asserts that Williams Marine has twelve employees, and Martin was the managing agent of the company assigned to the crane and barge on the day of the injury. Moreover, all of the alleged unsafe conditions were longstanding and within Martin's knowledge, purportedly making the barge presumptively unseaworthy. *Id.* at pp. 11–14; *Hercules Carriers, Inc. v. Florida,* 768 F.2d 1558, 1563 (11th Cir.1985); *Villers*

*Seafood Co., Inc. v. Vest,* 813 F.2d 339 (11th Cir.1987). Such unsafe and unseaworthy conditions were allegedly within Williams Marine's control at all times, as the company was physically located near the worksite and consistently exercised control over its own operations. *Id.* at 11–14. Hood therefore urges the Court to enter judgment in his favor on Williams Marine's limitation claims.

■ The Court finds material facts at issue such that summary judgment in favor of Hood on Williams Marine's limitation action is not appropriate. Williams Marine argues that Hood cannot meet his threshold duty to prove his claims prior to the Court reaching the limitation of liability issue, in that Hood has failed to present evidence that he is a seaman or that he is alternatively covered by the LHWCA, and there is insufficient evidence at this point for the Court to find that the barge and crane were unseaworthy. *See, e.g., Harbor Tug and Barge Co. v. Papai,* 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997); *Chandris, Inc. v. Latsis,* 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); *Hurst v. Pilings & Structures, Inc.,* 896 F.2d 504 (11th Cir.1990); *Beiswenger Enterprises Corp. v. Carletta,* 46 F.Supp.2d 1297, 1299 (M.D.Fla.1999); Dkt. 59, pp. 4–10. In any event, Williams Marine contends that this Court cannot as a matter of law find that it had privity or knowledge of the alleged negligent, unsafe or unseaworthy conditions with regard to the barge and crane; nor can Hood demonstrate that any knowledge on the part of Martin (who was not a manager) should conclusively be attributed to Williams Marine. *See e.g., Cupit v. McClanahan Contractors, Inc.,* 1 F.3d 346, 348 (5th Cir. 1993). Moreover, Williams Marine argues that the sole cause of Hood's injuries was his own inattentiveness to a potentially dangerous condition that he created. Dkt.

59, pp. 11–15. Lastly, Williams Marine argues that claims under the LHWCA can be subject to exoneration or limitation of liability, even if Hood can sufficiently prove in the alternative that he is a "longshoreman" who is entitled to compensation under the Act. *See, e.g., Hebert v. Exxon Corp.,* 1990 WL 19814, 1991 A.M.C. 946 (E.D.La.1990); *Becker v. Tidewater, Inc.,* 335 F.3d 376 (5th Cir.2003); Dkt. 59, pp. 17–19

The Court agrees that for purposes of Hood's Motion for Summary Judgment, sufficient fact issues exist as to whether Williams Marine should be able to limit its liability to the value of the barge/crane at issue on all of the claims raised by Hood. The Court will therefore deny Hood's Motion.

### B. *Hood's Motion for Summary Judgment (Omne)*

Hood also moves for summary judgment on the claim filed by Omne against Williams Marine, arguing that the claims asserted by Omne are not subject to limitation and therefore Omne cannot be entitled to any portion of the potential limitation fund. Hood argues that under Omne's agreement with Williams Marine, in which it was to hire Williams Marine employees and then lease them back for its construction projects, Omne was required to procure workers' compensation, but failed to do so. Instead, Omne has filed an alleged improper claim against Williams Marine seeking the entire limitation fund of $102,420, due to an alleged breach of the Client Services Agreement by Williams Marine in failing to disclose the true nature of Hood's work duties to Omne. Hood claims that this claim for breach of contract, along with an alleged indemnification claim by Omne, is improper and cannot be maintained as a matter of law.

Specifically, Hood argues that Omne's claim based on the alleged breach of the Client Services Agreement is based on a personal contract and therefore cannot be subject to limitation of liability under the "personal contracts doctrine," as the claim does not arise out of the conduct of master and crew. *See, e.g., Richardson v. Harmon,* 222 U.S. 96, 106, 32 S.Ct. 27, 56 L.Ed. 110 (1911); *American Car & Foundry Co. v. Brassert,* 289 U.S. 261, 264, 53 S.Ct. 618, 77 L.Ed. 1162 (1933). Furthermore, according to Hood, any claims based on indemnification for maintenance and cure in the form of medical expenses cannot be paid out of the limitation fund as they are sufficiently contractual to place them outside the Limitation Act. *See, e.g., Murray v. New York Central Railroad Company,* 171 F.Supp. 80 (S.D.N.Y.1959); *In the Matter of S & E Shipping,* 678 F.2d 636 (6th Cir.1982); *Mediterranean Shipping Co., S.A. v. POL–Atlantic,* 229 F.3d 397 (2nd Cir. 2000). In other words, Hood argues that in any event, maintenance and cure payments cannot in any way reduce the limitation fund. *See Brister v. A.W.I., Inc.,* 946 F.2d 350 (5th Cir.1991); *Murray,* 171 F.Supp. at 80. As such, Hood argues that Omne's claims do not support entitlement to any portion of the limitation fund, and therefore the Court should grant judgment in favor of Hood as a matter of law to prevent Omne from pursuing part of all of the fund.

In its cursory two-page Response (Dkt. 81), Omne avoids addressing the merits of Hood's arguments, claiming simply that his Motion against Omne is improper under Rule 56, Federal Rules of Civil Procedure. Omne argues that the Federal Rule does not permit one claimant, Hood, to move for summary judgment against another claimant, Omne, in this limitation action. Accordingly, Omne states that Hood's motion should be denied for lack of standing. Notably, Omne cites no supporting case law for its standing argument.

■ The Court finds that Hood does have standing to move for summary judgment against Omne. Should Omne be successful on its claims against Williams Marine in this limitation action, it would presumably be entitled to all or a portion of the limitation fund, the very same fund that is the object of Hood's claims. Hood and Omne are therefore adverse parties, because Hood is also seeking the entire limitation fund on this claims. Moreover, Hood is pursuing claims against Omne in the underlying admiralty action filed in state court. Accordingly, Hood is entitled to challenge Omne's claims on legal grounds under Rule 56, Federal Rules of Civil Procedure.

■ The Court further holds that Omne's claims are insufficient to entitle it to all or a portion of the limitation fund. As Hood correctly points out, Omne's claims are for breach of a personal contract and indemnification; they are "personal contract" claims that do not arise out of the master-servant relationship and therefore are not properly raised as claims in this limitation action filed pursuant to the supplemental admiralty rules. *See, e.g., Richardson v. Harmon,* 222 U.S. 96, 106, 32 S.Ct. 27, 56 L.Ed. 110 (1911); *American Car & Foundry Co. v. Brassert,* 289 U.S. 261, 53 S.Ct. 618, 77 L.Ed. 1162 (1933); *Murray v. New York Central Railroad Co.,* 171 F.Supp. 80 (S.D.N.Y.1959); *Brister v. A.W.I., Inc.,* 946 F.2d 350 (5th Cir.1991); *Mediterranean Shipping Company, S.A. v. POL–Atlantic,* 229 F.3d 397 (2nd Cir.2000); *In the Matter of S & E Shipping,* 678 F.2d 636 (6th Cir.1982). Instead, should Omne have personal breach of contract or indemnification claims against Williams Marine, those claims should be raised as a counterclaim in the

underlying maritime action or as a separate action on the part of Omne. Should Omne be successful, Williams Marine would then be fully liable on those personal claims and would not be subject to any limitation. The Court will therefore grant Hood's Motion against Omne, as Omne's claims do not entitle it to any potion of the limitation fund as a matter of law.

### C. *Williams Marine's Motion for Summary Judgment*

■ Williams Marine's Motion (Dkt. 99) is a partial motion for summary judgment that deals only with Hood's claim under the Jones Act. According to Williams Marine, it is entitled to complete exoneration as a matter of law on Hood's Jones Act claim because Hood was not a "seaman" who would be entitled to recover under the Act. Williams Marine argues that Hood cannot establish seaman status under the Jones Act because the spud barge work platform on which he was working the day of his injury was not a "Jones Act vessel" that can make Hood a seaman under the Act for purposes of this case. Notably, Williams Marine does not address the other claims made by Hood, nor does it address any possible summary judgment as to its limitation of liability on those claims. Accordingly, the Court will limit its discussion only to whether Hood is not a Jones Act seaman as a matter of law, thereby entitling Williams Marine to exoneration on Hood's Jones Act claim.

Williams Marine highlights several "undisputed facts" it claims demonstrate that the barge was not a "vessel" for purposes of Hood's Jones Act status. It points out that the Barge 0-1 was a "spud barge" with mounted crane, which is a "flat-decked floating structure that has devices similar to legs, called spuds, which are lowered from beneath and pushed into the waterway floor to anchor the structure in place." Dkt. 99, pg. 4; Williams deposition. As such, the barge had no means of self-propulsion and therefore had to be moved by pushboat. *Id.* Moreover, the barge and pushboat at issue in this case were employed as part of the Regatta Condominiums project primarily to build a seawall, and the depth of the water at the work site was around three to four feet. Dkt. 99, pp. 4–5; Hood deposition. As testified by Hood in his deposition, he worked on both the pushboat and barge performing about three dozen jobs for Williams Marine, including working as a carpenter, but he has never gone to sea in any kind of merchant vessel. Dkt. 99, pg. 5; Hood deposition. On the day of Hood's injury, the Barge 0-1 was located about twelve feet from shore via a gangplank, and its spuds were down. Dkt. 99, pg. 6; Hood deposition.

All of these facts argued by Williams Marine purportedly demonstrate conclusively that Hood cannot pursue his Jones Act claim because he was not a "seaman" covered by the Act. Williams Marine cites to the Eleventh Circuit case *Hurst v. Pilings & Structures,* 896 F.2d 504 (11th Cir. 1990), which it claims is on all fours with the facts of this case and makes "crystal clear" that Hood is not a seaman as a matter of law. In *Hurst,* the court held that a diver who was injured while attempting to climb onto a spud barge could not recover from his employer pursuant to the Jones Act because the barge was not a "vessel in navigation" within the meaning of the Act. *See Hurst,* 896 F.2d at 505–506. The court explained that the determination of a plaintiff's "seaman" status is very rarely an issue for summary judgment, but in order to qualify as a seaman, a worker must have basically a permanent connection with a vessel in navigation, and his employment must contribute to the function of that vessel. *See id.* (citations omitted).

The *Hurst* court reasoned that the spud barge at issue in that case, which was used to help repair a sea wall, fell conclusively outside the scope of a "vessel in navigation" as a matter of law. *See id.* at 506. This was because the plaintiff simply used the barge as a diving platform, and the barge had no navigational lights, cabin, pilothouse, or crew's quarters. *See id.* It was moved to various work sites around Florida through the use of a "push boat," similar to the workboat used in this case. *See id.* Under these circumstances, where the barge was simply a "floating work platform," the court affirmed the district court's entry of judgment in favor of the employer on the employee's Jones Act claim as a matter of law. *Id.* at 506–507.

Williams Marine argues that this case presents that exact same situation as *Hurst*. Here, the Barge 0–1 is a spud barge that was used solely as a work platform, to build seawalls and do small dredging projects. The barge worked in very shallow waters, was secured to the floor of the water at the time Hood was injured, and its only movement was "incidental to its primary purposes as a work platform." Dkt. 99, pg. 7. On the day of his injury, Hood was working on the crane fixed on the work platform, which had no means of self-propulsion. Williams Marine therefore claims these circumstances require the Court to hold that the barge, like the one in *Hurst*, was not a "vessel in navigation" that would make Hood a seaman entitled to recover under the Jones Act. *See also Stewart v. Dutra Construction Co., Inc.*, 230 F.3d 461, 468–69 (1st Cir. 2000) (holding that dredge used close to shore, primarily for tunnel construction, and incapable of self-propulsion, was not a "vessel in navigation" under the Jones Act); *Hatch v. Durocher Dock and Dredge, Inc.*, 820 F.Supp. 314, 316 (E.D.Mich.1993) (holding that summary judgment in favor of employer was appro-priate because barge on which employee was working was simply a floating work platform for dock construction, and not a "vessel in navigation" under the Jones Act); *compare Tonnesen v. Yonkers Contracting Co., Inc.*, 82 F.3d 30, 36–37 (2nd Cir.1996) (holding that issues of fact existed as to whether barge, which was used to transport supplies across water, was "vessel in navigation" under the Jones Act).

In response, Hood argues that material facts exist such that this Court cannot determine as a matter of law that Hood was not a seaman under the circumstances of this action. Although apparently admitting that he was injured aboard the stationary Barge 0–1, Hood argues that the majority of his job duties consisted of operating the pushboat to move the two barges around the worksite. In fact, he argues that "[a]ny duties he provided on the barges were accomplished while he was standing by waiting for the barges to be ready to be moved." Dkt. 105, pg. 1. Therefore, Hood asserts that "his contribution to the navigation of the push boat" makes him a seaman under the Jones Act. *Id.*

In essence, Hood argues that his "primary function is to work aboard and operate" a vessel in navigation (the pushboat), and as such he is a seaman covered by the Jones Act. He cites the Supreme Court case *Chandris, Inc. v. Latsis*, 515 U.S. 347, 370, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) for the proposition that "[t]he total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon." According to Hood, he was the crew of the workboat, and his work on the barges was simply "incidental to his work using the push boat to move the barges from place to place" about ten times a day. Dkt. 105, pg. 2. Hood claims that some

days he spent about 90 percent of his time on the work boat, and on average more than 30 percent of his time was spent delivering the barges to the worksite and then moving them around the site. *Id.* at pg. 3;. Hood Statement. Therefore, he argues that his status as a seaman cannot change simply because he performed work on the barge, where he was injured. Hood differentiates the *Hurst* case because, in that case, the injured worker was a diver working off a stationary platform, not an operator contributing to the navigation of the barge, as in this case. *Id.* Hood therefore urges the Court to deny Williams Marine's Motion for Summary Judgment and deny its claim for exoneration on Hood's Jones Act claim.

As an initial matter, the Court notes that in proceeding on this action for exoneration from liability under the Jones Act, it must first ascertain what acts entitle Hood to relief under the Act, and a this stage of this proceeding, the Court must therefore decide whether reasonable evidence could establish him as a "seaman" under the Act. *See, e.g., In re Royal Caribbean Cruises, Ltd.,* 55 F.Supp.2d 1367, 1369–70 (S.D.Fla.1999). Once Hood puts forth evidence of his entitlement to relief under the Jones Act (including evidence that he is a "seaman" under the Act), only then does the burden of proof shift to Williams Marine to prove lack of knowledge or privity. *See id.; see also Hercules Carriers, Inc. v. Claimant State of Florida,* 768 F.2d 1558, 1563–64 (11th Cir.1985); *Keys Jet Ski, Inc. v. Kays,* 893 F.2d 1225, 1230 (11th Cir.1990); *American Dredging Co. v. Lambert,* 81 F.3d 127, 129–30 (11th Cir.1996). Under this analysis, although the Court will take the facts in the light most favorable to Hood for purposes of Williams Marine's summary judgment motion, should the Court initially determine that no material facts exist and Hood is not a "seaman," Williams Marine will be entitled to exoneration from Hood's Jones Act claim. *See In re Royal Caribbean Cruises,* 55 F.Supp.2d at 1370. Otherwise, Williams Marine will still be entitled to pursue its limitation of liability claim should it be able to prove that it lacked privity or knowledge of the alleged unsafe conditions on the barge. *See id.* at 1372. Hood will still be required to establish his entitlement to relief under the Jones Act at the bench trial in this cause.

The Court finds that at this stage of the proceedings, Hood has presented sufficient material facts that may establish him as a "seaman" under the Jones Act. Although the Court agrees with Williams Marine that Hood's connection to a seafaring vessel appears tenuous, Hood has presented factual issues regarding the amount of time he actually spent operating the pushboat, which could be considered a sufficient "vessel in navigation" under the Jones Act. Although he was actually injured on the stationary crane located on the barge, which itself does not appear to be a "vessel in navigation," Hood has sufficiently argued that the totality of his job duties required him to navigate a vessel frequently as part of his employment. *See* Hood Statement; *Chandris,* 515 U.S. at 370, 115 S.Ct. 2172; *Hufnagel v. Omega Service Industries, Inc.,* 182 F.3d 340, 346 (5th. Cir.1999) (holding that "seaman-status is determined by the employee's entire employment-based connection to a vessel, and not by the immediate circumstances or location of the plaintiff's injury"); *see also Brown v. McKinnon Bridge Co., Inc.,* 732 F.Supp. 1479, 1483–84 (E.D.Tenn. 1989), *citing Smith v. Odom Offshore Surveys, Inc.,* 791 F.2d 411, 415 (5th Cir. 1986), *and Bertrand v. Int'l Mooring and Marine, Inc.,* 700 F.2d 240, 244–47 (5th Cir.1983) (reasoning that "mere fact that a person otherwise permanently assigned to a vessel was not on the vessel at the time

of his work would not preclude Jones Act coverage," as court will consider "all the circumstances of claimant's employment to determine relation of the vessel-related activities to the claimant's total responsibilities"); *Becker v. Dillingham Construction Pacific, Ltd.,* 2001 WL 969085 (D.Hawai'i 2001); *Delange v. Dutra Construction Co.,* 183 F.3d 916, 920 (9th Cir.1999).

As the Third Circuit Court of Appeals explained in *Shade v. Great Lakes Dredge & Dock Co.,* 154 F.3d 143, 147–50 (3rd Cir.1998), the Supreme Court in *Chandris* made clear that the claimant's ultimate connection to a vessel in navigation determines his status as a seaman, not the location of the injury, because " 'land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes then ashore.' " *Shade,* 154 F.3d at 147 (*quoting Chandris,* 515 U.S. at 361, 115 S.Ct. 2172). Under *Chandris,* the rule regarding "connection to a vessel in navigation" ensures that an employee does not " 'oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured.' " *Id.* (*quoting Chandris,* 515 U.S. at 363, 115 S.Ct. 2172). In other words, courts should examine the claimant's overall job assignments as they existed at the time of the injury to determine whether there is sufficient connection to a vessel in navigation, without focusing solely on the specific activity in which the employee was engaged at the time of his injury. *See also Carter v. Bisso Marine Co., Inc.,* 238 F.Supp.2d 778, 783 (E.D.La.2002); *Magnolia Towing Co. v. Pace,* 378 F.2d 12, 13 (5th Cir.1967) (affirming judgment that plaintiff, a tugboat pilot, was a seaman under the Jones Act, even though he was

injured in automobile accident en route to the ship); *Neill v. Diamond Drilling Co.,* 426 F.2d 487, 489–90 (5th Cir.1970).

Taking the evidence in the light most favorable to Hood, the Court cannot hold at this stage that he did not have sufficient connection to a "vessel in navigation" in order to make him a "seaman" under the Jones Act, even though his injury actually occurred on a floating barge. Hood has presented evidence that he was the sole crew of the workboat, which required him to frequently navigate the waters in order to push the barge and crane into position. Dkt. 105, pg. 2. Hood claims, and Williams Marine does not sufficiently dispute at this stage, that on certain days he spent about 90 percent of his time on the work boat, averaging more than 30 percent of his time delivering the barges to the worksite and then moving them around the site. Under these circumstances, the Court agrees that Hood's status as a seaman would not change simply because he performed work on the barge, where he was injured. *Id.* at pg. 3.

While Hood must still sufficiently present evidence establishing his entitlement to relief under the Jones Act (including establishing that he was in fact a "seaman") at the trial in this limitation case, the Court cannot hold as a matter of law at this point that he was not a seaman. Williams Marine's Motion for Summary Judgment will therefore be denied.

Accordingly, upon due consideration, it is hereby **ORDERED and ADJUDGED:**

1. Claimant Hood's Amended Motion for Summary Judgment on Limitation of Liability (Dkt. 57) is **DENIED.**

2. Claimant Hood's Motion for Summary Judgment on Claim of Omne Staff Leasing (Dkt. 79) is **GRANTED.** The Court finds that Omne is not entitled to any limitation fund proceeds in this action.

3. Williams Marine's Motion for Summary Judgment (Dkt. 99) is **DENIED**.

4. Hood's previously-filed Motion for Summary Judgment on Limitation of Liability (Dkt. 41) is **DENIED** as moot.

5. Hood's previously-filed Emergency Motion to require Williams Marine to provide maintenance and cure (Dkt. 9) is DE-NIED.